**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| ALPHA ELECTRIC GROUP LLC D/B/A OMNI POWER and OUR WORLD ENERGY LLC, | : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

_____/

Plaintiff George Moore (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1.     Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Alpha Electric Group LLC d/b/a Omni Power ("Omni Power" or "Alpha Electric") violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent and did so for the benefit of Our World Energy LLC ("Our World Energy" or "Our World").

4.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

5.     Plaintiff George Moore is an individual residing in the Northern District of Illinois.

2

6.     Defendant Our World Energy LLC is an Arizona-based solar sales and installation company that sells its solar products and services regionally through companies like Omni Power, including in Illinois.

7.     Defendant Alpha Electric Group LLC is an Arizona limited liability company that makes telemarketing calls for Our World Energy, including into Illinois.

8.     Omni Power is a registered d/b/a of Alpha Electric Group LLC.

**JURISDICTION AND VENUE**

9.     This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

10.     This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendant Our World Energy LLC and Alpha Electric Group LLC because they directed their illegal conduct into Illinois for the purposes of selling solar products and services to residents of Illinois directed to Illinois area codes. Furthermore, the Court has specific personal jurisdiction over Defendant Our World Energy LLC because it is believed to have entered into a contract with Alpha Electric Group LLC to market over a designated territory, which included Illinois. The claims herein arise out of that same conduct and relationship between Our World Energy LLC and Alpha Electric Group LLC.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls at issue were orchestrated and designed to obtain business from individuals located in this District, and the calls were placed into this District and therefore a substantial part of the events giving rise to the claims occurred in this District.

**BACKGROUND**

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

12.     The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

13.     The National Do Not Call Registry allows consumers to register their telephone number and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**FACTUAL ALLEGATIONS**

16.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     Plaintiff Moore's telephone number (630) XXX-XXXX is a non-commercial telephone number that is used for residential purposes.

18.     Plaintiff Moore uses the telephone number for his own personal, residential, and household needs and reasons.

19.     Plaintiff Moore does not use the number for business reasons or business use.

20.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

21.     Plaintiff Moore's number has been on the National Do Not Call Registry for years since he registered it on the Registry prior to receiving the calls at issue.

22.     Despite that, Mr. Moore received several telemarketing calls from Alpha Electric for Our World Energy.

23.     On October 4, 2025, Plaintiff received a call on his DNC-registered number. The caller stated: "This is Dan … I'm calling from the zero down solar program … I was just calling to check if you already got your solar panels installed."

24.     The call was a sales pitch for solar products and services and ended shortly thereafter.

25.     On October 8, 2025, Plaintiff received a second telemarketing call to the same number.

26.     The representative again said he was calling from the "zero down solar program."

27.     During the call, the representative proposed an in-person meeting for October 10, 2025, at 11:00 a.m. and stated: "With our program you can go solar for zero down and for less than what you are paying right now … we will see you Friday at 11 AM … we will see you at your house."

28.     On October 10, 2025, shortly after 11:00 a.m., a sales representative arrived at Plaintiff's home, referenced the prior calls ("…we called you…").

29.     When Plaintiff asked who he worked for, the representative identified "Omni Power."

5

30.     "Omni Power" is a registered name of Alpha Electric.

31.     The representative sent the Plaintiff a written proposal. Shortly thereafter, Plaintiff received an email proposal from "Our World Energy" directing him to "Open your proposal."

32.     When Plaintiff asked why the proposal referenced "Our World Energy" while the visitor claimed to be from "Omni Power," the representative responded that Omni Power and Our World Energy are the same company.

33.     Plaintiff did not sign up for any solar products or services and did not provide written consent to receive telemarketing calls from Omni Power, Our World Energy, or any affiliate.

34.     On October 13, 2025, Plaintiff emailed both Our World Energy and Omni Power seeking to identify the caller(s) and investigate the calls.

35.     Plaintiff received a response from Our World Energy that referenced "the Omni team," even though Plaintiff's email to Our World Energy did not mention Omni. Plaintiff received no response from Omni.

36.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated.

**OUR WORLD ENERGY'S LIABILITY FOR ALPHA ELECTRIC'S CALLING**

37.     For more than thirty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

38.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

39.     The FCC has instructed that sellers such as Our World may not avoid liability by outsourcing telemarketing and sales and installation activities to third parties, such as Alpha Electric:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

40.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

41.     Our World is liable for telemarketing calls placed by Alpha Electric and transferred or sold to Our World and its agents to generate customers for Our World and its agents, including the Plaintiff.

42.     Indeed, Our World's agreement with calling centers it hires like Alpha Electric contains numerous hallmarks of agency.

43. The Agreements characterizes companies like Alpha Electric as a "Sub Dealer," and makes reference to Our World's licensure and the third parties desire to use the "services and experience of Our World in the installation of electrical systems for residential solar systems…sells."

44. In those same agreements, Defendant Our World expressly contemplates that the calling vendor would conduct business in Illinois.

45. Defendant Our World exercised substantial control over the third parties in those agreements, including requiring the third parties to obtain its own licenses in Illinois, and required the third parties to meet monthly with Our World's manager "to discuss the progression of Vendor's growth."

46. Our World also reserved the right to ensure that those third parties complied with all applicable requirements of the Agreement, including by withholding and setting off payments to those third parties.

47. Those third parties also conveyed a "first priority security interest" (i.e. an enforceable lien under the Uniform Commercial Code) in all the "leads, prospective customers, [and] customer list," (i.e. results of the illegal telemarketing efforts complained of herein), among others, for any business it generated. In other words, those third parties generated business *exclusively* for Our World, a relationship that has the hallmarks of a captive agency.

48. Not only did Our World have a first priority interest in any customers those third parties generated, Our World also required those third parties to prepare and maintain books and records of documentation concerning all the customers those third parties marketed and sold to, and produce them upon demand, including in response to Our World's compliance reviews and demands.

8

49.     Our World also reserved the right to monitor those third parties telephone marketing efforts, including to "observe, inspect, shadow, or otherwise review" such efforts and conduct. It also reserved the right to drug test those third parties employees. And, demonstrating the importance of such reviews, Our World considered failure to cooperate in such reviews to be an instance of a default under the Agreement.

50.     Our World's agreement with those third parties also had clause requiring those third parties to comply with "any and all instructions and requests of Our World or its Representatives."

51.     Moreover, Our World attached an entire Code of Conduct and Marketing Requirements to its agreement with those third parties to make sure they agreed to comply with all of Our World's directives and terms therein.

52.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

54.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

55. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Alpha Electric National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone number were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Alpha Electric or a third party acting on their behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
>> **Our World Energy National Do Not Call Registry Sub-Class:** All persons within the United States: (1) whose telephone number were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Alpha Electric or a third party acting on their behalf; (3) within a 12-month period; (4) where such calls were made to generate customers for Our World Energy and (5) within the four years prior to the filing of the Complaint.

56. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class and Sub-Class.

57. Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

59. This Class Action Complaint seeks injunctive relief and money damages.

10

60. The Class, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

61. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

62. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

65. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

      a. Whether Defendants sent multiple calls to Plaintiff and members of the Alpha Electric National Do Not Call Registry Class;

      b. Whether Defendants' conduct constitutes a violation of the TCPA; and

      c. Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

66. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class because the Plaintiff has no interests which are antagonistic to any member of the Class.

67. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

68. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants or any other vendors used by Defendants as may be revealed in the course of discovery.

69. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Alpha Electric National Do Not Call Registry Class)**

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of Defendants, and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Alpha Electric National Do Not Call Registry Class despite their number being on the National Do Not Call Registry.

72.　　Defendants' violations were negligent, willful, or knowing.

73.　　As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Alpha Electric National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.　　That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

B.　　An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

C.　　Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: November 3, 2025

　　　　　　　　　　　　　　　　　　　　　*/s/ Anthony Paronich*
　　　　　　　　　　　　　　　　　　　　　Anthony Paronich
　　　　　　　　　　　　　　　　　　　　　Email:  anthony@paronichlaw.com
　　　　　　　　　　　　　　　　　　　　　PARONICH LAW, P.C.

350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100