**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| George Moore on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-13487 |
| v. | ) ) | Judge: Matthew F. Kennelly |
| Alpha Electric Group LLC d/b/a Omni Power, and Our World Energy LLC, | ) ) ) | |
| Defendants. | ) | |

<u>DEFENDANT ALPHA ELECTRIC GROUP LLC D/B/A OMNI POWER'S ANSWER
AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Defendant, Alpha Electric Group LLC d/b/a Omni Power ("Alpha"), by counsel, HINSHAW & CULBERTSON LLP, and for its Answer and Affirmative Defenses to Plaintiff George Moore's ("Plaintiff") Class Action Complaint (Doc. 1), states as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

**ANSWER:** **Paragraph 1 does not contain allegations of fact to which an answer is required and, instead, purports to cite to the Telephone Consumer Protection Act ("TCPA"), which speaks for itself. To the extent an answer is required, Alpha denies any remaining**

**allegations in this paragraph, denies violating the TCPA, and denies that Plaintiff is entitled to any damages against it.**

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649-50 (4th Cir. 2019).

**ANSWER:      Paragraph 2 does not contain allegations of fact to which an answer is required and, instead, purports to cite to the TCPA, regulations from the Code of Federal Regulations, and *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649-50 (4th Cir. 2019), which speak for themselves. To the extent an answer is required, Alpha denies any remaining**

allegations in this paragraph, denies violating the TCPA, and denies that Plaintiff is entitled to any damages against it.

3.     The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Alpha Electric Group LLC d/b/a Omni Power ("Omni Power" or "Alpha Electric") violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent and did so for the benefit of Our World Energy LLC ("Our World Energy" or "Our World").

**ANSWER:     Alpha admits that Plaintiff brings a TCPA claim but denies all other allegations in this paragraph, including any alleged wrongdoing or violations.**

4.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:     Denied.**

## PARTIES

5.     Plaintiff George Moore is an individual residing in the Northern District of Illinois.

**ANSWER:     Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 5 and therefore denies them.**

6.     Defendant Our World Energy LLC is an Arizona-based solar sales and installation company that sells its solar products and services regionally through companies like Omni Power, including in Illinois.

**ANSWER:     Alpha admits that Defendant Our World Energy LLC is an Arizona-based solar installation company. The remaining allegations in paragraph 6 constitute legal**

conclusions to which no response is required. **To the extent a response is required, the remaining allegations are denied.**

7.     Defendant Alpha Electric Group LLC is an Arizona limited liability company that makes telemarketing calls for Our World Energy, including into Illinois.

**ANSWER:     Alpha admits that it is an Arizona limited liability company.  The remaining allegations in paragraph 7 are denied.**

8.     Omni Power is a registered d/b/a of Alpha Electric Group LLC.

**ANSWER:     Admits.**

## JURISDICTION AND VENUE

9.     This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**ANSWER:     The allegations in paragraph 9 constitute legal conclusions to which no response is required. To the extent a response is required, Alpha admits that Plaintiff purports to invoke federal-question jurisdiction via his TPCA claim. Alpha denies jurisdiction is proper under Article III and denies any remaining allegations in this paragraph.**

10.     This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendant Our World Energy LLC and Alpha Electric Group LLC because they directed their illegal conduct into Illinois for the purposes of selling solar products and services to residents of Illinois directed to Illinois area codes. Furthermore, the Court has specific personal jurisdiction over Defendant Our World Energy LLC because it is believed to have

entered into a contract with Alpha Electric Group LLC to market over a designated territory, which included Illinois. The claims herein arise out of that same conduct and relationship between Our World Energy LLC and Alpha Electric Group LLC.

**ANSWER:** **The allegations in paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph and specifically denies both that the Court has personal jurisdiction over Alpha and that Alpha's contacts with this forum are sufficient to subject it to personal jurisdiction in this Court or in any other Illinois court. Alpha reserves and expressly does not waive its right to contest personal jurisdiction in this case.**

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls at issue were orchestrated and designed to obtain business from individuals located in this District, and the calls were placed into this District and therefore a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** **The allegations in paragraph 11 constitute legal conclusions to which no response is required. To the extent a response is required, Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11 and therefore denies them.**

## BACKGROUND

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

12.     The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

5

**ANSWER:** The allegations in paragraph 12 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference 47 U.S.C. § 227(c)(5), which speaks for itself. Alpha denies any remaining allegations in this paragraph.

13.     The National Do Not Call Registry allows consumers to register their telephone number and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** The allegations in paragraph 13 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference regulations from the Code of Federal Regulations, which speak for themselves. Alpha denies any remaining allegations in this paragraph.

14.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

**ANSWER:** The allegations in paragraph 14 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference regulations from the Code of Federal Regulations, which speak for themselves. Alpha denies any remaining allegations in this paragraph.

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** **The allegations in paragraph 15 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference the TCPA and regulations from the Code of Federal Regulations, all of which speak for themselves. Alpha denies any remaining allegations in this paragraph.**

## FACTUAL ALLEGATIONS

16. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:** **The allegations in paragraph 16 are legal conclusions to which no response is required. To the extent a response is required, Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 and therefore denies them.**

17. Plaintiff Moore's telephone number (630) XXX-XXXX is a non-commercial telephone number that is used for residential purposes.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17 and therefore denies them.**

18. Plaintiff Moore uses the telephone number for his own personal, residential, and household needs and reasons.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and therefore denies them.**

19. Plaintiff Moore does not use the number for business reasons or business use.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 and therefore denies them.**

20.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 and therefore denies them.**

21.     Plaintiff Moore's number has been on the National Do Not Call Registry for years since he registered it on the Registry prior to receiving the calls at issue.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and therefore denies them.**

22.     Despite that, Mr. Moore received several telemarketing calls from Alpha Electric for Our World Energy.

**ANSWER:** **Denied.**

23.     On October 4, 2025, Plaintiff received a call on his DNC-registered number. The caller stated: "This is Dan … I'm calling from the zero down solar program … I was just calling to check if you already got your solar panels installed."

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 and therefore denies them.**

24.     The call was a sales pitch for solar products and services and ended shortly thereafter.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 and therefore denies them.**

25. On October 8, 2025, Plaintiff received a second telemarketing call to the same number.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 and therefore denies them.**

26. The representative again said he was calling from the "zero down solar program."

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26 and therefore denies them.**

27. During the call, the representative proposed an in-person meeting for October 10, 2025, at 11:00 a.m. and stated: "With our program you can go solar for zero down and for less than what you are paying right now … we will see you Friday at 11 AM … we will see you at your house."

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27 and therefore denies them.**

28. On October 10, 2025, shortly after 11:00 a.m., a sales representative arrived at Plaintiff's home, referenced the prior calls ("…we called you…").

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28 and therefore denies them.**

29. When Plaintiff asked who he worked for, the representative identified "Omni Power."

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 and therefore denies them.**

30.     "Omni Power" is a registered name of Alpha Electric.

**ANSWER:** **Admits.**

31.     The representative sent the Plaintiff a written proposal. Shortly thereafter, Plaintiff received an email proposal from "Our World Energy" directing him to "Open your proposal."

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 and therefore denies them.**

32.     When Plaintiff asked why the proposal referenced "Our World Energy" while the visitor claimed to be from "Omni Power," the representative responded that Omni Power and Our World Energy are the same company.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32 and therefore denies them.**

33.     Plaintiff did not sign up for any solar products or services and did not provide written consent to receive telemarketing calls from Omni Power, Our World Energy, or any affiliate.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 and therefore denies them.**

34.     On October 13, 2025, Plaintiff emailed both Our World Energy and Omni Power seeking to identify the caller(s) and investigate the calls.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34 and therefore denies them.**

35.     Plaintiff received a response from Our World Energy that referenced "the Omni team," even though Plaintiff's email to Our World Energy did not mention Omni. Plaintiff received no response from Omni.

**ANSWER:** **Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35 and therefore denies them.**

36.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated.

**ANSWER:** **Denied.**

**OUR WORLD ENERGY'S LIABILITY FOR ALPHA ELECTRIC'S CALLING**

37.     For more than thirty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, 10 FCC Rcd.* 12391, 12397 ¶ 13 (1995).

**ANSWER:** **The allegations in paragraph 37 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, 10 FCC Rcd.* 12391, 12397 ¶ 13 (1995). which speaks for itself. Alpha denies any remaining allegations in this paragraph.**

38.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

**ANSWER:**    The allegations in paragraph 38 are not well-pleaded facts but state legal conclusions to which no response is required.

39.    The FCC has instructed that sellers such as Our World may not avoid liability by outsourcing telemarketing and sales and installation activities to third parties, such as Alpha Electric:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

**ANSWER:**    The allegations in paragraph 39 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013). which speaks for itself. Alpha denies any remaining allegations in this paragraph.

40.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

12

**ANSWER:** The allegations in paragraph 40 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference *In re DISH Network, LLC*, 28 FCC Rcd. 6574, ¶ 1 (2013), which speaks for itself. Alpha denies any remaining allegations in this paragraph.

41. Our World is liable for telemarketing calls placed by Alpha Electric and transferred or sold to Our World and its agents to generate customers for Our World and its agents, including the Plaintiff.

**ANSWER:** The allegations in paragraph 41 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

42. Indeed, Our World's agreement with calling centers it hires like Alpha Electric contains numerous hallmarks of agency.

**ANSWER:** The allegations in paragraph 42 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

43. The Agreements characterizes companies like Alpha Electric as a "Sub Dealer," and makes reference to Our World's licensure and the third parties desire to use the "services and experience of Our World in the installation of electrical systems for residential solar systems…sells."

**ANSWER:** The allegations in paragraph 43 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

44.     In those same agreements, Defendant Our World expressly contemplates that the calling vendor would conduct business in Illinois.

**ANSWER:     The allegations in paragraph 44 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.**

45.     Defendant Our World exercised substantial control over the third parties in those agreements, including requiring the third parties to obtain its own licenses in Illinois, and required the third parties to meet monthly with Our World's manager "to discuss the progression of Vendor's growth."

**ANSWER:     The allegations in paragraph 45 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.**

46.     Our World also reserved the right to ensure that those third parties complied with all applicable requirements of the Agreement, including by withholding and setting off payments to those third parties.

**ANSWER:     The allegations in paragraph 46 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.**

47.     Those third parties also conveyed a "first priority security interest" (i.e. an enforceable lien under the Uniform Commercial Code) in all the "leads, prospective customers, [and] customer list," (i.e. results of the illegal telemarketing efforts complained of herein), among

others, for any business it generated. In other words, those third parties generated business exclusively for Our World, a relationship that has the hallmarks of a captive agency.

**ANSWER:** The allegations in paragraph 47 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

48. Not only did Our World have a first priority interest in any customers those third parties generated, Our World also required those third parties to prepare and maintain books and records of documentation concerning all the customers those third parties marketed and sold to, and produce them upon demand, including in response to Our World's compliance reviews and demands.

**ANSWER:** The allegations in paragraph 48 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

49. Our World also reserved the right to monitor those third parties telephone marketing efforts, including to "observe, inspect, shadow, or otherwise review" such efforts and conduct. It also reserved the right to drug test those third parties employees. And, demonstrating the importance of such reviews, Our World considered failure to cooperate in such reviews to be an instance of a default under the Agreement.

**ANSWER:** The allegations in paragraph 49 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.

15

50.     Our World's agreement with those third parties also had clause requiring those third parties to comply with "any and all instructions and requests of Our World or its Representatives."

**ANSWER:     The allegations in paragraph 50 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.**

51.     Moreover, Our World attached an entire Code of Conduct and Marketing Requirements to its agreement with those third parties to make sure they agreed to comply with all of Our World's directives and terms therein.

**ANSWER:     The allegations in paragraph 51 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha denies the allegations in this paragraph.**

52.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network,* 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**ANSWER:     The allegations in paragraph 52 are not well-pleaded facts but state legal conclusions to which no response is required. To the extent a response is required, Alpha admits that the allegations reference *In re DISH Network,* 28 FCC Rcd. 6592-93 ¶ 46. which speaks for itself. Alpha denies any remaining allegations in this paragraph.**

16

## CLASS ACTION ALLEGATIONS

53.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

**ANSWER:     Alpha incorporates by reference all other paragraphs of this Answer as if fully stated herein.**

54.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

**ANSWER:     Alpha admits that Plaintiff purports to bring this action on behalf of himself and certain classes under Federal Rule of Civil Procedure 23 as alleged in paragraphs 54-57 of the Complaint. Alpha denies the remaining allegations in this paragraph and denies that this case is an appropriate vehicle for class action.**

55.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Alpha Electric National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone number were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Alpha Electric or a third party acting on their behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
> > **Our World Energy National Do Not Call Registry Sub- Class:** All persons within the United States: (1) whose telephone number were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Alpha Electric or a third party acting on their behalf; (3) within a 12-month period; (4) where such calls were made to generate customers for Our World Energy and (5) within the four years prior to the filing of the Complaint.

17

**ANSWER:** **Alpha admits that Plaintiff purports to bring this action on behalf of himself and certain classes under Federal Rule of Civil Procedure 23 as alleged in paragraphs 54–57 of the Complaint. Alpha denies the remaining allegations in this paragraph and denies that this case is an appropriate vehicle for class action.**

56. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class and Sub-Class.

**ANSWER:** **Denied.**

57. Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

**ANSWER:** **Alpha admits that Plaintiff purports to bring this action on behalf of himself and certain classes under Federal Rule of Civil Procedure 23 as alleged in paragraphs 54–57 of the Complaint. Alpha denies the remaining allegations in this paragraph and denies that this case is an appropriate vehicle for class action.**

58. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

**ANSWER:** **Denied.**

59. This Class Action Complaint seeks injunctive relief and money damages.

**ANSWER:** **Alpha admits that Plaintiff seeks injunctive relief and money damages in this lawsuit. Alpha denies the remaining allegations in paragraph 59 and denies that any relief of any kind is warranted or available to Plaintiff.**

60. The Class, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

**ANSWER:** **Denied.**

61. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

**ANSWER:** **Denied.**

62. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

**ANSWER:** **Denied.**

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER:** **Denied.**

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

**ANSWER:** **Denied.**

65.    There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

> a.    Whether Defendants sent multiple calls to Plaintiff and members of the Alpha Electric National Do Not Call Registry Class;
>
> b.    Whether Defendants' conduct constitutes a violation of the TCPA; and
>
> c.    Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**ANSWER:    Alpha denies the allegations in all of paragraph 65 including subparagraphs a through c.**

66.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class because the Plaintiff has no interests which are antagonistic to any member of the Class.

**ANSWER:    Denied.**

67.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

**ANSWER:    Alpha lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 67 and therefore denies the**m.

68.    Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants or any other vendors used by Defendants as may be revealed in the course of discovery.

**ANSWER:** **Denied.**

69.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER:** **Denied.**

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Alpha Electric
National Do Not Call Registry Class)**

70.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER:** **Alpha incorporates by reference all other paragraphs of this Answer as if fully stated herein.**

71.     The foregoing acts and omissions of Defendants, and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Alpha Electric National Do Not Call Registry Class despite their number being on the National Do Not Call Registry.

**ANSWER:** **Denied.**

72.     Defendants' violations were negligent, willful, or knowing.

**ANSWER:** **Denied.**

73. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Alpha Electric National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**ANSWER:** **Denied.**

## PRAYER FOR RELIEF

Alpha denies the allegations set forth in the "WHEREFORE" paragraph immediately following Paragraph 73 of the Complaint, including all subparts. Alpha also denies that Plaintiff or any of the purported class members have any basis in law or fact to maintain the current action against Alpha, denies that any class can be certified in this matter, and denies that Plaintiff is entitled to any damages, injunctive relief, or any relief whatsoever.

## DEMAND FOR JURY TRIAL

Alpha denies that any of the allegations set forth in the Complaint allege triable issues against it. To the extent a jury trial is permitted, Alpha requests a trial by the maximum number of jurors allowed by law.

## AFFIRMATIVE DEFENSES

Alpha hereby asserts the following affirmative and other defenses to the Complaint. By asserting these defenses, Alpha does not allege or admit that it has the burden of proof or the burden of persuasion with respect to any particular defense. Nor does Alpha admit that Plaintiff is relieved of his burden to prove every element of his claims and the damages, if any, to which he may be entitled.

**First Affirmative Defense**
**(Lack Of Personal Jurisdiction)**

Plaintiff's claims fail because this Court lacks personal jurisdiction over Alpha. Alpha is not subject to the general personal jurisdiction of this court because it is not "at home" in Illinois. Nor is it subject to specific personal jurisdiction because Alpha did not purposefully avail itself of this forum. Any alleged calls at issue were not placed by Alpha or by a third party for which Alpha is vicariously (or otherwise) liable.

**Second Affirmative Defense**
**(Failure to State a Cause of Action)**

The Complaint fails to allege facts sufficient to state a cause of action against Alpha. For example, Plaintiff fails to show that any calls allegedly received were those for which the called party is charged as required by the TCPA.

**Third Affirmative Defense**
**(Consent)**

Plaintiff is barred from asserting claims in whole or in part to the extent the calls at issue were made with prior express permission or consent.

**Fourth Affirmative Defense**
**(Arbitration and Class Waiver)**

Plaintiff and the putative class members are barred from asserting claims in this forum to the extent their claims are subject to a binding arbitration agreement and an agreement to arbitrate their disputes on an individual (non-class) basis, depriving this Court of jurisdiction over such claims, and rendering venue in this Court improper.

**Fifth Affirmative Defense**
**(Acquiescence, Estoppel, Waiver, and Unclean Hands)**

Plaintiff and the putative class members are barred from asserting their claims, in whole or in part, by the doctrines of acquiescence, estoppel, waiver, and/or unclean hands. For example, Plaintiff cannot assert claims under the TCPA against Alpha to the extent he or others voluntarily provided telephone numbers.

**Sixth Affirmative Defense**
**(Laches)**

Plaintiff and the putative class members are barred from asserting their claims in whole or in part by the doctrine of laches.

**Seventh Affirmative Defense**
**(Failure to Mitigate Damages)**

Plaintiff and the putative class members are barred from asserting their claims in whole or in part by their failure to mitigate their purported damages.

**Eighth Affirmative Defense**
**(No Knowing or Willful Misconduct)**

Any claim for treble damages is barred because Alpha did not engage in knowing or willful misconduct.

**Ninth Affirmative Defense**
**(No Proximate Cause)**

Alpha did not proximately cause any damages, injury, or violation alleged in the Complaint. Instead, to the extent any harm occurred, the acts of third parties proximately caused any alleged damages, injuries, or violations at issue.

**Tenth Affirmative Defense**
**(No Standing)**

Plaintiff and the putative class members lack standing to bring the claims alleged in the Complaint, especially against Alpha, under *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015), because any harm allegedly caused by the calls at issue (which Alpha denies) is not fairly traceable to any violation allegedly committed by Alpha.

**Eleventh Affirmative Defense**
**(Good Faith)**

Any and all claims brought in the Complaint are barred because the caller possessed a good faith belief that it had consent to call the number at issue.

**Twelfth Affirmative Defense**
**(No Agency or Vicarious Liability and Proportional Allocation of Fault)**

Any damages, injury, violation or wrongdoing alleged in the Complaint was caused by third parties or Plaintiff for which Alpha cannot be held vicariously liable. Further, Alpha did not authorize, ratify, encourage, participate in, aid, abet, or assist in any of the conduct alleged in the Complaint and cannot be held liable for it. Alpha's liability, if any, must be eliminated or reduced by an amount proportionate to the fault attributable to those third parties or Plaintiff.

**Thirteenth Affirmative Defense**
**(Adequate Remedy at Law)**

The Complaint fails to state a claim for injunctive relief because Plaintiff has an adequate remedy at law. For example, the TCPA provides for statutory penalties of $500 to $1,500 per call, or monetary compensation for actual damages.

### Fourteenth Affirmative Defense
### (Due Process)

The application of the TCPA upon which the Complaint is based, including the imposition of statutory damages on Alpha, would violate the Due Process provisions of the United States Constitution. For example, certain definitions contained in the TCPA render the statute unconstitutionally vague. Additionally, the statutory penalties sought by Plaintiff are excessive, particularly to the extent Plaintiff seeks them on a class-wide basis.

### Fifteenth Affirmative Defense
### (No "Call")

Alpha did not "make any call" to Plaintiff, as that term is used in the TCPA, 47 U.S.C. § 227 (b)(1)(A).

### Sixteenth Affirmative Defense
### (Hobbs Act)

The Hobbs Act cannot be validly or constitutionally applied to preclude Alpha from raising defenses to an action arising under the TCPA or rules or regulations promulgated thereunder.

### Seventeenth Affirmative Defense
### (FCC Exceeding Delegated Authority)

Plaintiff's TCPA claim is barred to the extent it is based on regulations or rulings that exceed the FCC's delegated authority.

### Eighteenth Affirmative Defense
### (Class Action Deficiencies)

Plaintiff cannot satisfy the prerequisites set forth in Federal Rule of Civil Procedure 23 and therefore cannot maintain this action as a class action. Further, Alpha gives notice that, in the event

that this Court certifies a class, which Alpha denies would be appropriate, Alpha reserves the right to adopt and incorporate by reference each and every applicable defense pleaded (and any others that may be appropriate at that point) to all members of such class.

## Nineteenth Affirmative Defense
### (Established or Existing Business Relationship)

Any and all TCPA claims brought in the Complaint are barred in whole or in part by Plaintiff's established business relationships with the caller, to the extent one existed.

## Twentieth Affirmative Defense
### (Residential Number)

Plaintiff's claims are barred to the extent his number or putative class members' numbers are not residential.

## Twenty-First Affirmative Defense
### (Reasonable Practices and Procedures)

Any and all TCPA claims brought in the Complaint are barred in whole or in part because Alpha has established and implemented reasonable practices and procedures to prevent violations of the TCPA and related regulations.

## Twenty-Second Affirmative Defense
### (Substantial Compliance)

Alpha is not liable to Plaintiff (or the putative classes) because it acted reasonably and with due care and substantially complied with all applicable statutes, regulations, ordinances, and other laws.

### Twenty-Third Affirmative Defense
### (Bona Fide Error)

Any and all claims brought in the Complaint are barred in whole or in part because, to the extent there was any violation of the TCPA and related regulations (which Alpha denies), any such violation was not intentional and resulted from a bona fide error.

### Twenty-Fourth Affirmative Defense
### (One Call)

Any and all Do-Not-Call related claims brought in the Complaint are barred in whole or in part to the extent Plaintiff or any putative class member did not receive more than one telephone call within any 12-month period by or on behalf of Alpha.

### Twenty-Fifth Affirmative Defense
### (Plaintiff Lacks Injury)

Plaintiff lacks any injury in fact with respect to any telephone calls made as a result of Plaintiff's feigned interest in the products being sold.

### Twenty-Sixth Affirmative Defense
### (Reservation of Right to Assert Further Defenses)

Alpha has not knowingly or intentionally waived any applicable defenses and gives notice that it intends to rely on such other and further affirmative defenses as may become available during discovery in this action. Alpha reserves the right to amend its Answer to assert any such defense.

WHEREFORE, Defendant Alpha Electric Group LLC d/b/a Omni Power, respectfully requests that this Court enter judgment in its favor and against Plaintiff on Plaintiff's Class Action Complaint; and for such further relief, as this court deems applicable and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Natalie Burris
_____
Natalie Burris

Justin M. Penn
Natalie Burris
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone: 312-704-3000
Fax: 312-704-3001
jpenn@hinshawlaw.com
nburris@hinshawlaw.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on January 9, 2026, I electronically filed the foregoing **document(s)** with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, reflecting service on all counsel of record.

*/s/ Natalie Burris*