IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | | |
|---|---|---|
| **GEORGE MOORE, individually and on behalf of all others similarly situated,** § § § | | |
| *Plaintiff*, § § | | |
| v. § § | Case No. 1:25-cv-13487-P | |
| **ALPHA ELECTRIC GROUP LLC D/B/A OMNI POWER and OUR WORLD ENERGY, LLC,** § § § § § | Honorable Matthew F. Kennelly | |
| *Defendants* § | | |

**DEFENDANT OUR WORLD ENERGY'S MOTION TO DISMISS**

Respectfully submitted,

*/s/Caleb B. Bulls*
Caleb B. Bulls
Texas State Bar No. 24082749
caleb.bulls@kellyhart.com
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Erik J. Ives (ARDC #6289811)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1202
eives@foxswibel.com

***Attorneys for Defendant Our World Energy***

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendant Our World Energy, LLC ("OWE") hereby submits this *Motion to Dismiss* (the "Motion"). In support, OWE respectfully shows the Court as follows:

## I.
## INTRODUCTION

1. Through his *Original Complaint* (the "Complaint"), Plaintiff George Moore ("Plaintiff") contends that OWE and Defendant Alpha Electric Group, LLC d/b/a Omni Power ("Omni" and with OWE, "Defendants") violated the Telephone Consumer Protection Act (the "TCPA"). [*See generally* Doc. 1]. According to Plaintiff, Omni is liable under the TCPA because it initiated two solicitation phone calls to Plaintiff even though Plaintiff had listed himself on the federal do-not-call registry. [*See id.*]. While Plaintiff has alleged that Omni was the entity that placed the complained-of phone calls, Plaintiff contends that OWE should be vicariously liable because Omni was supposedly acting as OWE's agent. [*See id.*]. Plaintiff's contention is without merit; Omni is *not* OWE's agent.

2. The question of whether Omni is OWE's agent is important for two reasons. First, because OWE did not initiate the complained-of calls, the only way that the Court can exercise personal jurisdiction over OWE is if Omni *was* OWE's agent (it was not). Second, Plaintiff has only alleged that OWE can be vicariously liable for Omni's alleged violations of the TCPA. Plaintiff has not asserted any direct liability claims against OWE. Thus, the only way to establish liability against OWE is if Plaintiff can plausibly allege that Omni was OWE's agent (again, it cannot). The nature of OWE and Omni's relationship (i.e., an independent contractor relationship) is unequivocally established by the Complaint's allegations and the controlling agreement referenced therein. Because there is no agency relationship that allows liability to be imputed to OWE, Plaintiff has failed to (i) demonstrate that the Court can exercise personal jurisdiction over OWE; and (ii) state a claim upon which relief can be granted.

3. Important here, OWE and Omni entered into a *Sub Dealer Agreement* (the "Agreement") that governed their relationship.[1] The Agreement explicitly referred to Omni as an independent contractor; it provided that it was "non-exclusive;" it prohibited Omni from referring to itself as OWE's employee or agent; and it even included a provision that required Omni to comply with all telemarketing laws and registration requirements, "*including do-not-call laws*." [Ex. A-1, p. 2 (independent contractor designation), p. 18 of Exhibits to Agreement (compliance with telemarketing laws) (emphasis added)]. Moreover, there is nothing in the Agreement that gives OWE the right to control the means and methods by which Omni provides its services—as would be required to establish a principal-agent relationship. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 746 (7th Cir. 1998); [*see generally* Ex. A-1 (not placing any requirements or restrictions on marketing efforts, other than compliance with laws)].

4. In nearly identical circumstances, the Court has held that it could not exercise personal jurisdiction over a non-resident defendant under the TCPA when the plaintiff failed to establish an agency relationship. Specifically, in *Moore v. Charter Comm's, Inc.*, this very same plaintiff (George Moore)[2] asserted claims under the TCPA against Charter Communications, Inc. ("Charter"). 523 F. Supp.3d 1046, 1051 (N.D. Ill. 2020). According to Plaintiff, Charter was liable under an agency theory of liability for calls made by its alleged agent. *Id.* In support of its agency theory of liability, Plaintiff pointed to allegations that Charter authorized the alleged calls, monitored the alleged agent's performance, had the right to give instructions to the alleged agent, and could terminate the parties' relationship. *Id.* at 1049.

---

[1] Because this Motion is being made under Rule 12(b)(2), the Court can consider evidence in order to decide the Motion. *Spitz v. Starr Indem. and Liab. Co., Inc.*, No. 21 C 1044, 2023 WL 6276559, at *1 n.1 (N.D. Ill. Sept. 26, 2023). Moreover, the Court can consider the Agreement as part of its Rule 12(b)(6) analysis because the Agreement is expressly referenced in the Complaint and is "central" to Plaintiff's claim against OWE. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

[2] Plaintiff is a serial litigant under the TCPA. Indeed, he has filed over thirty separate lawsuits under the TCPA in this district since 2019. [Ex. B (Schedule of Lawsuits filed by Plaintiff)].

5.      The Court dismissed Plaintiff's complaint at the pleading stage, holding that Plaintiff's allegations did not establish an agency relationship. *Id.* at 1051-54 (dismissing Plaintiff's actual authority, apparent authority and ratification arguments). To reach its holding, the Court relied on the fact that the operative agreement prohibited the alleged agent from making outbound telemarketing calls. *Id.* And without an agency relationship, the Court determined that it could not exercise personal jurisdiction over Charter. *Id.* at 1054.

6.      Like *Charter*, dismissal is warranted in this case. Similar to *Charter*, Plaintiff has failed to plausibly allege an agency relationship between OWE and Omni. Contrary to Plaintiff's allegations, the Agreement establishes that Omni is an independent contractor and not OWE's agent. The Agreement refers to Omni as an independent contractor; it prohibits Omni from making calls that violate the TCPA (such as the alleged calls to Plaintiff); and it does not give OWE the right to control the means and methods of the services that Omni provides. [*See generally* Ex. A-1]. Thus, just as the Court held that Plaintiff failed to allege an agency relationship in *Charter*, the Court should dismiss this case at the pleading stage on the ground that no agency relationship exists. *See Charter*, 523 F.Supp.3d at 1054.

7.      Because an agency relationship is necessary for the Court to exercise jurisdiction over OWE, and is a predicate to Plaintiff's TCPA claim, OWE respectfully requests that the Court grant this Motion and dismiss Plaintiff's claims against OWE for (i) lack of personal jurisdiction; and (ii) failure to state a claim under the TCPA.

## II.
## RELEVANT FACTUAL BACKGROUND

**A.      *OWE Enters Into the Agreement with Omni.***

8.      OWE is a limited liability company formed and headquartered in the State of Arizona. [Doc. 1, ¶ 6; Ex. A, ¶ 2]. Its business consists of installing state-of-the-art, locally-manufactured solar panels that are designed to save end consumers money. [Ex. A, ¶ 3]. For

business development purposes, OWE contracts with independent contractors (like Omni) to perform lead generation and sales development-type services. [*Id.*].

9. Relevant to this case, to govern their relationship, OWE and Omni entered into the Agreement. [Ex. A-1]. The Agreement contains several provisions that are relevant to this dispute and that establish that the relationship between OWE and Omni is an independent contractor relationship (i.e., not a principal-agent or employer-employee relationship).

10. First, Section 2(b) states that OWE would be the "non-exclusive" installer "for any residential solar panel sales made by Vender's [sic] independent vendors." [Ex. A-1, p. 1]. This meant that Omni was free to do business with other solar panel installers. [*See id.*].

11. Second, Section 2(c) of the Agreement (titled "Status as Independent Contractor") explicitly states that "Vendor's [Omni's] status under this Agreement is that of an independent Vendor and shall in no way be deemed to be any other status, including (without limitation) that of an agent or employee of OWE":

> (c) **Status as Independent Contractor.** Nothing contained in this Agreement shall be construed as creating a joint venture, partnership, employment or franchise relationship between the Parties, and no Party shall have the right, power or authority to create any obligations or duty, express or implied, on behalf of the other Party. Vendor's status under this Agreement is that of an independent Vendor and shall in no way be deemed to be any other status, including (without limitation) that of an agent or employee of OWE or its Affiliates. Vendor shall not refer to itself, hold itself out as, or knowingly permit any person to believe Vendor is anything other than an independent Vendor, including (without limitation): agent, Affiliate, employee, partner, or franchisee of OWE. OWE may, in its sole and absolute discretion, (i) contract for services with other parties even though they may be similar or identical to the Services hereunder, inside or outside the Territory; (ii) sell the Products through any other person; and (iii) offer pricing, terms, conditions, or other benefits to other persons different from or superior to those offered to Vendor hereunder.

[Ex. A-1, p. 2]. Section 2(c) also prohibits Omni from "refer[ring] to itself, hold[ing] itself out as, or knowingly permit[ting] any person to believe Vendor [Omni] is anything other than an independent Vendor, including" as an "agent, [a]ffiliate, employee, partner, or franchisee of OWE." [*Id.*].

12. Third, in addition to defining the nature of the parties' relationship, the Agreement required Omni to comply "with all laws and registration requirements relating to telemarketing, including do-not-call requirements":

> 6. **TELEMARKETING REQUIREMENTS.** Vendor must comply with all laws and registration requirements relating to telemarketing, including do-not-call requirements. Vendor is not permitted to (a) make any unsolicited call or send text messages to a cell phone number; or (b) make any call through an automated dialer (including any telephony technology that is capable of autodialing).

[*Id.*, p. 18 of Exhibits; *see also* p. 5 of Agreement (Section 4(i) (requiring Omni to comply with all applicable laws)]. Fourth, the Agreement was based on an initial one-year term with automatic one-year renewals. Either party could terminate the Agreement for any reason by providing thirty days' written notice to the other party. [Ex. A-1, p. 9, (Section 7(a))]. And fifth, the Agreement requires Omni to be responsible for utilizing its own equipment to perform the services and to bear whatever expenses it incurs in connection with developing leads or sales. [*Id.*, p. 13 (Section 8(i))].

C. *Plaintiff Allegedly Receives Calls That Violate the TCPA.*

13. According to his Complaint, Plaintiff is registered-and-listed on the federal do-not-call registry. [*Id.*, ¶ 21]. On October 4, 2025, Plaintiff alleges that he received a phone call solicitation, checking to see if Plaintiff "got [his] solar panels installed." [*Id.*, ¶ 23]. Plaintiff does not allege who made the phone call and has not alleged any further details regarding the call. [*Id.*, ¶ 24]. Plaintiff does not allege that the caller identified himself as a representative of OWE or that he was calling on OWE's behalf. [*Id.*].

14. Plaintiff alleges that he then received a second phone call solicitation on October 8, 2025—with the caller again stating that he was calling from a "zero down solar program." [*Id.*, ¶ 25]. During that call, the representative allegedly proposed an in-person meeting, which Plaintiff apparently agreed to. [*See id.*, ¶ 27]. Just like the first call, Plaintiff does not allege who made the phone call or that the caller identified himself as a representative of OWE. [*Id.*].

15. As agreed to by Plaintiff, an in-person meeting occurred on October 10, 2025. [*Id.*, ¶¶ 28-29]. During the meeting, the sales representative indicated that he worked for "Omni Power." [*Id.*, ¶ 29]. After the meeting, Plaintiff allegedly received an e-mail proposal from "Our World Energy." [*Id.*, ¶ 31]. Plaintiff does not allege that there were any additional phone calls or follow-up meetings that occurred after the meeting.

16. Instead, Plaintiff chose "not [to] sign up for any solar products or services." [*Id.*, ¶ 33]. Less than a month later, on November 4, 2025, Plaintiff filed the lawsuit on a class action basis, alleging—among other things—that OWE should be vicariously liable for Omni's alleged violations of the TCPA.

### III.
### APPLICABLE LEGAL STANDARDS

**A.**     ***Personal Jurisdiction (Federal Rule of Civil Procedure 12(b)(2)).***

17. There are two different theories under which a court can exercise jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Plaintiff alleges that the Court has specific jurisdiction over OWE.[3] [Doc. 1, ¶ 10]. A finding of specific jurisdiction requires that the defendant have "certain minimum contacts with [the forum state]." *Int'l Shoe Co.*, 326 U.S. at 316.

18. Minimum contacts are established "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). The purposeful availment requirement allows potential defendants to reasonably anticipate conduct for which they may be haled into court in a foreign jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

---

[3] Plaintiff's Complaint does not allege that the Court can exercise general jurisdiction over OWE. [Doc. 1, ¶ 10].

472 (1985)). In deciding "a Rule 12(b)(2) motion, the Court may also consider evidence submitted by a defendant opposing the Court's exercise of jurisdiction." *Spitz v. Starr Indem. and Liab. Co., Inc.*, No. 21 C 1044, 2023 WL 6276559, at *1 n.1 (N.D. Ill. Sept. 26, 2023). Unless the plaintiff can satisfy its burden and make these threshold showings, a Court cannot exercise personal jurisdiction over a non-resident defendant. *Id.*

**B.      Failure to State a Claim (Federal Rule of Civil Procedure 12(b)(6)).**

19.     Federal Rule of Civil Procedure 12(b)(6) exists to quickly dispose of meritless claims before the parties and Court engage in lengthy and expensive litigation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). "To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must contain factual allegations sufficient to 'state a claim to relief that is plausible on its face.'" *Brady K. v. Health Care Serv. Corp.*, No. 1:25 C 759, 2025 WL 2734542, at *1 (N.D. Ill. Sept. 25, 2025) (quoting *Twombly*, 550 U.S. at 570).

20.     "A claim is plausible on its face when the facts alleged 'allow[ ] the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Brady K*, 2025 WL 2734542, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Put differently, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023)).

21.     While courts do not typically consider documentary evidence in connection with a Rule 12(b)(6) motion, there is an exception that applies when (i) a plaintiff mentions a document in its complaint; and (ii) the document is central to the plaintiff's claim(s). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Such is the case here. Plaintiff repeatedly mentions provisions set forth in the Agreement in an attempt to establish an agency relationship—making it "central" to his claims against OWE. *See id.*; [Doc. 1, ¶¶ 42-51]. The Court can, thus, consider the Agreement as part of its Rule 12(b)(6) analysis. *Id.*

# IV.
# ARGUMENT & AUTHORITIES

**A.** *Plaintiff's Claims Against OWE Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).*

22. The claims that Plaintiff has asserted against OWE should initially be dismissed because Plaintiff has failed to demonstrate that the Court can exercise personal jurisdiction over OWE, a non-resident defendant. Whenever a TCPA-plaintiff sues an entity that did not place the complained-of calls, the plaintiff is required to establish an agency relationship in order to show that jurisdiction can be exercised over the non-resident defendant. Agency liability under the TCPA can be established in three circumstances; namely, whenever: (i) the caller had the actual authority to act on the non-calling-defendant's behalf; (ii) the caller had apparent authority to act on the non-calling-defendant's behalf; or (iii) the non-calling-defendant ratified the caller's actions. In this case, Plaintiff contends that Omni had actual or apparent authority to act on OWE's behalf. [Doc. 1, ¶¶ 42-51]. Contrary to his contention, the operative Agreement (incorporated in the pleadings) and the Affidavit of Alicia O'Neill[4] establish that Omni had neither actual nor apparent authority.

### i. There is No Actual Authority.

23. "An agency relationship arises when a person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to do so." *Charter*, 523 F.Supp.3d at 1051. To prove actual authority, a plaintiff must show that (1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731-32 (7th Cir. 2014).

---

[4] Ms. O'Neill is OWE's Finance, Accounting, Strategy & Legal Program Manager. [Ex. A, ¶ 2].

24. In TCPA cases, courts have held that an agency relationship exists when the defendant required the telemarketer to use an approved script, exercised control over the call volume, and generally controlled how the calls would be placed. *See, e.g., Thompson v. Sutherland Global Servs., Inc.*, 2019 WL 1470238, at *6–7 (N.D. Ill. Apr. 3, 2019). That is absolutely not the case here. There is nothing in the Agreement (or anywhere else for that matter) that indicates that OWE gave Omni a script or prescribed the method or volume of calls for Omni to place. [*See generally* Ex. A-1]. Instead, the Agreement is silent as to any volume requirements or provisions that could govern the method and manner of any telemarketing calls. [*Id.*]. Without those types of provisions, Plaintiff has failed to allege actual authority under the TCPA. *See id.* Moreover, the Agreement explicitly prohibited Omni from contacting individuals listed on the federal do-not-call registry. [Ex. A-1, p. 18 of Exhibits (Ex. C, Section 6)].

25. *Moore v. Charter Comm's, Inc.* is instructive to the facts at hand. In that case, Plaintiff asserted claims under the TCPA against Charter, claiming that Charter was vicariously liable under an agency theory of liability for calls that supposedly violated the TCPA. *Id.* In support of his claim, Plaintiff pointed to allegations that Charter authorized the alleged calls, monitored the alleged agent's performance, had the right to give instructions to the alleged agent, and could terminate the parties' relationship. *Id.* at 1049.

26. The Court held that Plaintiff's allegations were not enough to establish an agency relationship, and as a result, that the Court could not exercise personal jurisdiction over Charter. *Id.* at 1051-54. The same outcome should be reached here. Similar to the contract in *Charter*, the Agreement prohibited Omni from contacting individuals listed on the federal do-not-call registry [*id.*], required Omni "to comply in all respects with all applicable state and federal law[s] in providing the Services under this Agreement" [*id.*, p. 5], and did not control the means and methods by which Omni provided its services. [*See generally id.*; *see also* Ex. A, ¶ 5]. Thus, for the same

reasons the Court found that there was no agency relationship in *Charter*, the Court should find that Omni is not OWE's agent. *See id.*; *see also Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (dismissing claim at the pleading stage when the only allegations of an alleged agency relationship was that Subway and T-Mobile entered into a marketing agreement).

27. If that were not enough, the Agreement contains additional provisions that confirm that the relationship between Omni and OWE is an independent contractor relationship and not a principal-agent relationship. To start, Section 2(b) provides that it is a "non-exclusive" arrangement—meaning that Omni can contract with other solar installers. Then, Section 2(c) explicitly (i) states that the relationship between OWE and Omni is an independent contractor relationship; (ii) prohibited Omni from referring to itself as anything other than an independent contractor; and (iii) states that neither party "shall have the right, power, or authority to create any obligations or duty, express or implied, on behalf of the other Party." *Id.* Similarly, Paragraph 1 of Exhibit D (Marketing Requirements) required Omni to disclose the type of relationship between OWE and Omni (i.e., an independent contractor relationship) to any prospective customers:

> 1. **RELATIONSHIP WITH OWE.** At all times throughout the Term, Vendor shall disclose in a clear and conspicuous manner the independent Vendor relationship between OWE and Vendor in a manner consistent with the terms of this Agreement. Vendor shall ensure that each Consumer and Customer understands the independent Vendor relationships between Vendor and OWE.

[Ex. A-1, p. 21 of Exhibits (Exhibit D, Section 1)]. Finally, the Agreement also made Omni responsible "for all costs related to the Services, Work, equipment, uniforms, training, project management, call centers, customer care, information technology systems, [and] software, . . . ." [Ex. A-1, p. 13 (Section 8(i))]. This provision is also emblematic of an independent contractor relationship. *E.g. Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435 438 (7th Cir. 1996) (an independent contractor is responsible to pay its expenses).

28. At bottom, the Agreement firmly establishes that Omni was an independent contractor and *not* OWE's agent. *See Moore*, 523 F.Supp.3d at 1051-54. The Agreement does not require Omni to exclusively work for OWE; it does not place any limitations, restrictions or requirements concerning Omni's marketing efforts; it does not designate the amount of sales that Omni had to generate; it does not dictate how Omni could generate leads; and it does not authorize OWE to control how Omni could provide its services. [*See generally* Ex. A-1]. This is simply not the type of situation where OWE had the right to control the manner and the means of a telemarketing campaign that would be sufficient for the Court to determine that Omni was OWE's agent. *See id.*

29. Plaintiff nonetheless alleges that there are several provisions in the Agreement that demonstrate that OWE and Omni's relationship is a principal-agent relationship.[5] Contrary to Plaintiff's allegations, none of the cited provisions do so.

30. First, Plaintiff points to the fact that the Agreement supposedly "requir[ed] [Omni] to obtain its own licenses in Illinois,[6] and required [Omni] to meet monthly with Our World's manager 'to discuss the progression of Vendor's [Omni's] growth.'" [Doc. 1, ¶ 45]. But that does not matter. To the contrary, a licensure "requirement suggests a distinct occupation," which is indicative of an independent contractor relationship. *Hennighan v. Insphere Ins. Solutions, Inc.*, 38 F.Supp.l3d 1083, 1102 (N.D. cal. 2014), *aff'd*, 650 Fed. App'x 500 (9th Cir. 2016); *see also Charter*, 523 F.Supp.3d at 1049, 1054 (holding no agency relationship despite Charter monitoring alleged agent's actions).

---

[5] There are several other minor provisions that Plaintiffs refers to in his Complaint that supposedly evidence a principal agent-relationship, such as a drug testing provision a provision that requires Omni to maintain its books and records. Plaintiff's allegations aside, these provisions do not provide OWE any control over the services that Omni provides—as would be required to establish an agency relationship.

[6] Tellingly, however, the Agreement does not actually reference "Illinois." Instead, the Agreement contemplated that "Services" would be provided in Arizona. [Ex. A-1, p. 1 (Section 2(b))].

31. Second, Plaintiff alleges that Section 2(b)'s monthly meeting requirement somehow transforms the relationship from an independent contractor relationship to an agency relationship. [Doc. 1, ¶ 45]. Not true. To begin with, there is nothing in Section 2(b) that contemplates anything other than meetings to discuss the "progression of [Omni's] growth." [Ex. A-1, pp. 1-2]. It does not contemplate any discussion of volume requirements (there were none), call scripts (none), or Omni's telemarketing efforts. [*Id.*]. In other words, nothing in Section 2(b) gives OWE the right to control the manner and method of the provision of Omni's services. [*Id.*]. As result, this "requirement" does not establish an agency relationship. *See Dixon v. Burman Co.*, 593 F. Supp. 6, 12 (N.D. Ind. Aug. 12, 1983), *aff'd*, 742 F.2d 1459 (7th Cir. 1984) (requirement that insurance agent attend weekly meetings was insufficient to create employment relationship)).

32. Third, Plaintiff alleges that Section 4(i) Agreement created an agency relationship because it required Omni to comply with legal requirements. This allegation fares no better. [*See* Doc. 1, ¶ 46]. In fact, in *Charter*, the Court relied on such a provision to determine that an agency relationship had <u>not</u> been created. *Chater*, 523 F.Supp.3d at 1050. Plaintiff's attempt to create an agency relationship through Section 4(i) fails for the same reasons. *See id.*

33. Fourth, Plaintiff contends that an agency relationship exists because OWE can offset payments owed to Omni and because OWE retained a security interest in Omni's assets. [Doc. 1, ¶¶ 46-47]. But OWE's ability to offset payments under the Agreement and its reservation of a security interest in Omni's assets do not have any bearing on whether the Agreement created an agency relationship. Indeed, the dispositive question in determining whether an agency relationship exists is whether the alleged principal exerts "control over the manner and means of the agent's performance." *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1122 (11th Cir. 2018). "[M]ere economic control" does not matter. *Id.* ("[C]ourts must focus on an entity's control over the manner and means of the agent's performance and the details of the work

*and ignore mere economic control or control over the end result of the performance*.") (emphasis added).

34. Fifth, Plaintiff contends that OWE had the ability to "monitor" Omni's actions, efforts and conduct. [Doc. 1, ¶ 49]. This contention was explicitly rejected in *Moore* as a basis for creating agency liability. *Charter*, 523 F.Supp.3d at 1049. The Court should reach an identical result here. *See id.* Plaintiff also contends that a contractual provision that requires Omni to follow OWE's "instructions" regarding services provided under the Agreement demonstrates that OWE controlled Omni's work. [Doc. 1, ¶ 50]. Plaintiff's allegation aside, "[r]equiring an independent contractor to follow certain policies and procedures does not by itself constitute sufficient control to create an agency relationship." *Jackson v. Callahan Publishing, Inc.*, 2021 IL App. (1st) 191458, ¶ 191, 198 N.E.3d 1099, 1143 (Ill. App. Ct. 2021).

35. Lastly (and without any explanation), Plaintiff alleges that OWE's Code of Conduct and Marketing Requirements somehow established an agency relationship. [*Id.*, ¶ 51]. A similar contention was rejected in *Charter*. In that case, Plaintiff claimed that Charter's demand that the contractor follow Charter's marketing guidelines created an agency relationship. The Court disagreed and held that Plaintiff failed to establish a *prima facie* case of a principal-agent relationship. *See Moore*, 523 F.Supp.3d at 1049-50 (finding no principal-agent relationship even though Charter's "marketing rules" "govern[ed] the agreement").

36. As evidenced by the cited cases, none of the provisions that Plaintiff attempts to rely upon are sufficient to create a principal-agent relationship. Critically, not a single one of these provisions grants OWE the right to control the manner and means of any telemarketing campaign. As a result, they are not sufficient to establish a principal-agent relationship between OWE and Omni. *See id.*; *see also Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 746 (7th Cir. 1998) (holding no agency relationship where "[t]he parties had, at most, a contractual arrangement

whereby Lube Tech provided certain services in consideration of a commission."). And with no agency relationship, Plaintiff has failed to demonstrate that the Court can exercise personal jurisdiction over OWE. OWE respectfully requests that the Court grant the Motion for that reason.

### ii. There is no Apparent Authority

37. Any contention that Plaintiff can establish an agency relationship through an apparent authority argument also fails. "Apparent authority 'exists when a third-party reasonably relies on the ***principal's manifestation*** of authority to an agent.'" *Charter*, 523 F. Supp. 3d at 1053 (emphasis added) (quoting *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020)). "Statements by an agent are insufficient to create apparent authority." *Charter*, 523 F. Supp. 3d at 1053 (citing *Warciak*, 949 F.3d at 357 (citation omitted)).

38. *Charter* is instructive on this point too. In that case, the Court seized on the reliance element required to establish apparent authority. Specifically, the Court held that apparent authority was lacking because Plaintiff had not alleged that he relied on any of the agent's alleged representations. *Id.* at 1053-54 ("The problem for Moore is that he does not allege, as he must, how he reasonably relied on EXP's [alleged] apparent authority.").

39. The same outcome is warranted here. Just like his case against Charter, Plaintiff was not even aware of OWE's identity until he received a proposal after the in-person meeting (which was subsequent to the complained-of calls). [Doc. 1, ¶¶ 31-32]. Also similar, Plaintiff does not advance any allegations that demonstrate how he relied on anything that OWE said or did. [*Id.*]. Indeed, as set forth in the Complaint, "Plaintiff did not sign up for any solar products or services." [*Id.*, ¶ 33]. Because there are no allegations that demonstrate how Plaintiff relied on any representation that OWE made, there is no basis to find apparent authority. *Id.* OWE respectfully requests that the Court grant the Motion for that reason too.

### iii. Personal Jurisdiction Conclusion.

40. In this case, Plaintiff has failed to allege or demonstrate that there is a principal-agent relationship between OWE and Omni. There is simply no conceivable basis that OWE could have foreseen being haled into Illinois courts for Omni's alleged violations of the TCPA. Thus, for the same reasons set forth in *Charter*, Plaintiff has failed to demonstrate that the Court can exercise personal jurisdiction over OWE. *Id.* OWE respectfully requests that the Court grant the Motion for that reason.

### B. Plaintiff's Claims Against OWE Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim Upon Which Relief Can Be Granted.

41. In the event that the Court determines that it can exercise personal jurisdiction over OWE (it should not), Plaintiff's Complaint is ripe for dismissal under Rule 12(b)(6) for failure to state a claim. Specifically, because OWE did not initiate the complained-of phone calls, Plaintiff's claim against OWE is dependent upon the existence of a principal-agent relationship. As described in detail *supra*, Plaintiff's allegations are not sufficient to plausibly allege a principal-agent relationship. Accordingly, Plaintiff has failed to state a claim against OWE for vicarious liability under the TCPA. *See id.* OWE respectfully requests that the Court grant the Motion for that reason too.

### V. CONCLUSION & PRAYER FOR RELIEF.

For the above-stated reasons, OWE respectfully requests that the Court dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, OWE requests that the Court dismiss Plaintiff's Complaint against OWE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/Caleb B. Bulls
Caleb B. Bulls
State Bar No. 24082749
caleb.bulls@kellyhart.com
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Facsimile: (817) 878-9280

Erik J. Ives (ARDC #6289811)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1202
eives@foxswibel.com

*Attorneys for Defendant Our World Energy*

# CERTIFICATE OF SERVICE

On January 16, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the Court. I hereby certify that I have served the following counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5.

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043

Justin Penn
Natalie Burris
**HINSHAW & CULBERTSON, LLP**
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606

/s/Caleb B. Bulls
Caleb B. Bulls