**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ALPHA ELECTRIC GROUP LLC D/B/A OMNI POWER AND OUR WORLD ENERGY LLC<br><br>Defendants. | Case No. 1:25-cv-13487<br><br><br>**JURY TRIAL DEMANDED** |

## RESPONSE IN OPPOSITION TO DEFENDANT OUR WORLD ENERGY LLC'S MOTION TO DISMISS

## INTRODUCTION

Defendant Our World Energy LLC's (Our World or Defendant)'s motion to dismiss should be denied because the Plaintiff has pled sufficient facts to demonstrate the exercise of personal jurisdiction in Illinois against Our World, on account that it, by admission, does business in Illinois for the sale of solar panels through purportedly "independent" sales vendors, like co-Defendant Alpha Electric Group LLC d/b/a Omni Power (Alpha). The claims at issue in this litigation arise out of conduct jointly committed by Our World and Alpha as part of a well-pled agency relationship for the sale of solar panels in Illinois to Illinois addresses and area codes.

And looking beyond this fact, Our World maintains Illinois offices. It brokers and sells solar panels, through its contractors like Alpha, to Illinois residents. And the conduct alleged here–marketing for its solar panels–indisputably was aimed at Illinois. Courts across the country, including this one have held sufficient such allegations, as part of an agency relationship. This Court should reject Defendant's general denial of liability and agency couched as an attack on personal jurisdiction, or its alternative attempts to plead that the Plaintiff has failed to state a claim.

Defendant's motion reflects a common strategy in TCPA cases: structuring a sales operation through intermediaries and then invoking that structure to evade liability. Our World does not dispute that the calls to Mr. Moore were made to sell Our World–branded products, or that, if a sale resulted, the resulting contract would be between the customer and Our World, not Alpha. Instead, it contends that its liability disappears because the calls were placed by its regional dealer and installer, Alpha, rather than by Our World itself. It does not. The TCPA does not permit a defendant to reap the benefits of unlawful telemarketing while insulating itself from

liability by operating through intermediaries, or by demanding that consumers plead the hidden internal mechanics of a telemarketing scheme deliberately kept from public view.

## LEGAL STANDARD

Rule 12(b)(6) demands only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. When a defendant challenges personal jurisdiction through a Rule 12(b)(2) motion, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction over the defendant is proper. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, the plaintiff must make only a *prima facie* showing of jurisdictional facts to withstand the motion. *Id.* The Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Id.*

## ARGUMENT

A. The Plaintiff has unquestionably pled sufficient facts to justify the exercise of specific personal jurisdiction against Our World in Illinois based on calls he received from Illinois area codes to his phone number in Illinois.

Defendant, in essence, adopts in its motion an "I didn't do it" defense, but styles it instead as an attack on this Court's exercise of personal jurisdiction over the Defendant because the Defendant (allegedly) did not call Plaintiff. That may be so, but this argument ignores the fact that Our World's agent, Alpha, who did call Plaintiff, directed its conduct into Illinois by

sending calls (1) to an Illinois resident, (2) with an Illinois area code, (3) who then came to the

Plaintiff's address, and (4) sent emails branded with Our World Energy as a result of this call and

visit. Despite these facts, Defendant then somehow claims that it is not subject to specific

personal jurisdiction in Illinois. This argument lacks any merit and must be denied.

Specific personal jurisdiction exists, which is at issue here, when the defendant has

"purposefully directed his activities at residents of the forum and the litigation results from

alleged injuries that arise out of or related to those activities." *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 472 (1985). A federal court enjoys personal jurisdiction over a defendant to the

same extent as the Courts of the State of Illinois. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713

(7th Cir. 2002). Illinois's long-arm statute permits jurisdiction to the full extent allowed by due

process. *Id.* at 713.

The plaintiff must establish two things to establish *specific* jurisdiction over an out-of-

state defendant. *First*, the plaintiff must demonstrate that the conduct falls within, and the cause

of action arises out of, one of the enumerated bases of jurisdiction in Illinois' long-arm statute.

*Second*, the plaintiff must demonstrate that the exercise of jurisdiction comports with

constitutional limits of due process by showing either that the defendant purposefully directed

activities at Illinois or purposefully availed itself of conducting business in Illinois, and

exercising jurisdiction would comport with traditional notions of fair play and substantial justice.

*Tingstol Co. v. Rainbow Sales, Inc.*, 8 F. Supp. 2d 1113, 1115 (N.D. Ill. 1998)

Both prongs are met here. *First*, Illinois law makes clear that vicarious liability can serve

as a basis for the exercise of jurisdiction against out-of-state defendants who "in person or

through an agent" commit tortious acts within Illinois. 735 ILCS § 5/2-209(a). In other words,

companies, like Our World, who commit torts through their agents, like Alpha, are subject to the

- 3 -

Illinois long arm statute. And, Alpha's subject conduct, calling Illinois residents with Illinois area codes, in violation of the TCPA, has already been held to be an appropriate basis for jurisdiction under the Illinois long arm statute. *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) ("MinuteClinic's act of placing a call to a phone number with an Illinois-affiliated area code—knowing that number was associated with a past customer of an area clinic—and leaving a message that solicits the customer to visit an area clinic constitutes purposeful direction warranting the Court's exercise of jurisdiction."). Similarly, in *Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014), this Court stated that "courts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant." Mr. Moore's sworn declaration confirms that OWE's co-defendant called his Illinois residential number (630 area code), which has been registered on the National Do Not Call Registry since 2006; that a sales representative came to his Illinois home; and that the representative expressly stated that "Omni Power and Our World Energy are the same company," while sending a solar proposal branded "Our World Energy." *See* Exhibit 1, Declaration of George Moore, ¶¶ 5-12.

So too here, where Plaintiff's declaration makes clear not only that he was called at an Illinois number while he was in Illinois, but also an Alpha representative *visited Plaintiff at his home in Illinois* to solicit him for solar panels here, to be installed on the roof of his Illinois home. Tellingly, Alpha has not contested the fact that this Court enjoys personal jurisdiction over it. And, given this at-home visit following a telephone call through which Our World's branded goods and services were promoted, there can be no question that the second prong of the jurisdiction analysis, whether Alpha, and, by extension, Our World, purposefully availed itself of conducting business in Illinois, is likewise met. Indeed, Our World itself maintains an office in

Peoria, Illinois (Exhibit 2), which is itself evidence of purposeful availment. *See Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 693 (N.D. Ill. 2002); *Cmty. Merch. Servs., Inc. v. Jonas*, 822 N.E.2d 515, 524 (Ill. App. 2004). Indeed, Our World Energy has a position advertised to hire a "Site Surveyor" in Peoria, Illinois. *See* https://www.terra.do/climate-jobs/job-board/site-surveyor-solar-8359974/ (Last Visited February 20, 2026).

Moreover, the Seventh Circuit affirmatively foreclosed Defendant's jurisdiction-based vicarious liability argument in *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021), where it concluded that the actions of telemarketing agent could be attributed to principal for the purposes of establishing specific personal jurisdiction and satisfied federal due process requirements. *Accord Showers v. Pelican Inv. Holdings Grp., LLC*, No. 3:23-CV-2864-NJR, 2024 WL 4350309, at *4 (S.D. Ill. Sept. 30, 2024) (citing *Bilek* and rejecting similar argument on less developed pled facts than in that case); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 862 (N.D. Ill. 2020) (rejecting similar vicarious liability arguments couched as jurisdictional challenge). *Moore v. Charter Comm's.*, which predates the Seventh Circuit's decision in *Bilek*, is distinguishable. In *Moore*, Charter expressly *forbid* the caller from making *any* telemarketing calls, which violated the express terms of the parties' marketing agreement, and this Court held that there was no agency relationship, and correspondingly, no jurisdiction, as a result. 523 F. Supp. 3d 1046, 1052 (N.D. Ill. 2020). That is not the case here, where the parties' agreement explicitly *permits* vendors to engage in "activity involving telephone or text messaging communication," so long that it does so in compliance "with all applicable laws, including Federal and state do-not-call laws." (ECF No. 24-1 ¶ (w)).

As both of the prongs of the personal jurisdiction analysis have been met, this Court should appropriately conclude that this Court can exercise personal jurisdiction over Our World,

even on an agency theory, provided that the Plaintiff demonstrates agency. *McHale v. W.D. Trucking, Inc.*, 39 N.E.3d 595, 615 (Ill. App. Aug. 14, 2015). As the following section explains, Plaintiff pleads sufficient facts to infer an agency relationship at the pleadings stage.

B. <u>The Plaintiff adequately pleads an agency relationship.</u>

Under the TCPA, defendants like Our World are "vicariously liable for the TCPA violations of third-party callers 'where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and the third-party caller.'" *Williams v. Pillpack LLC*, 644 F. Supp. 3d 845, 851 (W.D. Wash. 2022). To establish an agency relationship, courts consider the "bedrock theories of agency" including "[1] actual authority, [2] apparent authority, and [3] ratification." *Id*; *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 743–44 (N.D. Ill. 2014). Mr. Moore alleges facts showing that the calls were made to market Our World's products, invoked Our World's name, including on the subsequent emails and text messages and would have admittedly resulted in benefits flowing directly to Our World, including the signing of a contract between Plaintiff and Our World. Those facts plausibly support an inference that the caller acted on Our World's behalf and within a telemarketing structure designed to generate business for Our World. The precise contours of that relationship, including who controlled which aspects of the marketing campaign, how the calls were initiated, and what authority the caller exercised, are matters uniquely within Defendants' knowledge. At this early stage, Mr. Moore has alleged sufficient facts to support a reasonable inference that Our World exercised actual authority and apparent authority over Alpha, and that Our World ratified Alpha's conduct.

Throughout its brief, Our World attempts to draw parallels between this case and Mr. Moore's loss in *Charter*. However, its reliance on *Charter* is misplaced because key to this Court's decision in that case was Charter's *express prohibition* in the contract of the *very* conduct that Mr. Moore sought to hold Charter vicariously liable, outbound calling of *any sort*.

*Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046, 1052 (N.D. Ill. 2020). As will be explored below, in contrast, here, Our World expressly *permitted* Alpha to make outbound telemarketing calls and contemplated that it would make such calls, send its representatives to interested prospects' homes, and provide them an Our World proposal and contract, all generated through Our World's systems and subject to multiple pages outlining Our World's control over that very marketing and sales process.

    1.   *Mr. Moore has sufficiently pleaded Our World's actual authority.*

Actual authority arises when "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Williams*, 644 F. Supp. 3d at 854 (quoting Restatement (Third) Of Agency § 2.02(1)). Actual authority covers actions "[1] specifically mentioned to be done in a written or oral communication or [2] consistent with a principal's general statement of what the agent is supposed to do." *Id.* The former represents "express" actual authority, such as when the principal states "in very specific or detailed language" how an agent is to act. The later represents "implied" actual authority, such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business[.]").

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020) "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an inference that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba v. Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 997 (N.D. Ill. 2016) ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.")

Here, Our World's Agreement with Alpha contains remarkable indicia of actual, and in particular implied actual, authority to conduct telemarketing. Plaintiff satisfies that standard many times over. *First*, Our World retained the unilateral right to modify every operative rule governing Alpha's customer-facing conduct at any time, with only seven days' notice. The Agreement grants Our World the power to unilaterally revise the Code of Conduct, the Marketing Requirements, and the Vendor Obligations, among others, all without Alpha's consent. This functionally unlimited right to alter the parties' relationship in real time is precisely the power to give interim instructions that courts, including the *Toney* Court, have identified as the hallmark of an agency relationship. *Toney*, 75 F. Supp. 3d at 743-44; RESTATEMENT (THIRD)

OF AGENCY § 1.01 cmt. f ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.").

*Second*, Our World required Alpha to use exclusively Our World-prepared and Our World-approved marketing materials, including those materials which included Our World's logos. (ECF No. 24-1, PageID 147). Our World also mandated that Alpha train all employees on the Our World Code of Conduct, a detailed script outline governing what Alpha's representatives could say to customers, in what languages, on which topics, and with what representations. (ECF No. 24-1, PageID 144-46). The *Toney* court found analogous facts, including that the principal "participated in developing the script and sales pitch" that the telemarketer used, and "required that solicitations be presented 'verbatim' to call recipients," sufficient to allege an agency relationship at the pleading stage. 75 F. Supp. 3d at 743. Relatedly, Our World mandated that Alpha use only Our World's software platforms, specifically "NEO and Doors," for "all aspects" of its sales activities. (ECF No. 24-1, PageID 143). Access to systems "normally within the seller's exclusive control" is itself illustrative of authority under FCC guidance addressing TCPA vicarious liability. *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6592 (2013) (identifying "access to information and systems that normally would be within the seller's exclusive control" as evidence supporting agency).

*Third*, Our World reserved the right to "observe, inspect, shadow, or otherwise review the conduct of Vendor in their performing of the Services" at any time, and required Alpha to immediately "comply with any and all instructions and requests of OWE" and to "immediately cease any activity" upon demand. (ECF No. 24-1, ¶ (p), (q)). An agent who must "abandon an activity" upon the principal's command or "comply with any and all instructions and requests of

- 9 -

OWE," is not functioning as a mere independent contractor. It is acting subject to the principal's control. Indeed, to this point, *Toney* also points out that the agreement is not dispositive. There, despite the agreement stating that it "creates no agency, partnership or joint venture relationship," the court held that "the existence of an agency relationship is a question of fact, and agency can be created by contract or by conduct. . . . How Sempris and Quality intended for their relationship to operate is of course relevant, but not determinative, of how it actually functioned." 75 F. Supp. 3d at 744. Relatedly, even *if* the Court were to hold that Alpha was acting as an independent contractor, that is not dispositive, since an independent contractor can still be an agent. *U.S.C.C. Mgmt. Co. v. Ogden Allied Sec. Servs., Inc.*, No. 90 C 1389, 1991 WL 274445, at *2 (N.D. Ill. Dec. 13, 1991). Throughout its brief, Our World improperly conflates an independent contractor/employee analysis with an agency analysis. (*E.g.*, MTD at PageID 102).

And the Defendant's reliance on *Garcia-Celestino v. Ruiz Harvesting, Inc.*, is particularly inapposite. *Contra* 898 F.3d 1110, 1122 (11th Cir. 2018). Here, once Alpha generated a lead, that lead was *exclusively* Our World's lead, and Our World had an enforceable security interest in the same, for which Alpha would be paid a commission. This is one of the greatest hallmarks of agency there is. *In re Dish Network*, 28 F.C.C. Rcd. at 6592; *Dobkin v. Enter. Fin. Grp., Inc.*, No. 2:14-CV-01989 WHW, 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014) (imposing vicarious liability when defendant engaged in a revenue sharing agreement with a call center).

Mr. Moore has also more than adequately pled facts giving rise to such an inference of actual authority based on the fact that the calls were all made from agents who claimed to be calling from Our World, invoked the Our World name, and marketed Our World's branded goods and services, including via an email from Our World and a manifestation that "Omni Power and Our World Energy are the same company." *Compl.* ¶¶ 31-32. Mr. Moore further

alleges the calls were made for the purpose of generating sales appointments and business for Our World products, resulting in direct benefits to Our World. *Id.* ¶¶ 41, 43-51. These allegations support the inference that the callers were authorized to act for Our World in initiating telemarketing communications and promoting its products, which is sufficient at the pleading stage to establish actual or implied actual authority. Taken together, these representations and contractual provisions plausibly allege that Alpha reasonably believed, consistent with Our World's repeated manifestations, that Our World wished and expressly permitted Alpha to engage in outbound telephone solicitation to sell Our World's solar products. The calls at issue were incidental to, and reasonably necessary for, the very purpose for which Our World hired Alpha. Plaintiff's actual authority allegations are sufficient.

2. *Mr. Moore has sufficiently pleaded Our World's apparent authority.*

Our World is vicariously liable under an "apparent authority" theory. Apparent authority arises when "[1] a third party reasonably believes the actor has authority to act on behalf of the principal and [2] that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, at *4 (9th Cir. Apr. 5, 2022) (citing RESTATEMENT § 2.03). The FCC's illustrative examples are instructive and provide guidance on this topic. *In re Dish Network*, 28 FCC Rcd. at 6592. The FCC has identified as indicative of apparent authority situations in which a seller of goods authorizes the caller "to use the seller's trade name, trademark and service mark," as well as to convey "detailed information regarding the nature and pricing of the seller's products and services." *Id.*

From Mr. Moore's perspective, nothing suggested that Our World and Alpha/Omni were anything but the same company, particularly given Our World's manifestations to Mr. Moore via

the email he received with a solar proposal which came from Our World, and prominently featured Our World's logo:



OWE's attempt to defeat apparent authority by invoking "reliance" (and the fact Mr. Moore did not ultimately purchase solar) misstates what is required at this stage and ignores Mr. Moore's sworn account of how OWE presented itself through Omni. OWE's reliance argument fails for an additional reason: Mr. Moore's declaration establishes that OWE's branding and identity were invoked during the sales process itself. The representative texted proposal figures under the name "Our World Energy," emailed a proposal branded "Our World Energy," and affirmatively stated that Omni and OWE "are the same company." *See* <u>Exhibit 1</u>. These manifestations are traceable directly to OWE's own marketing system and materials. Apparent authority does not require that Plaintiff ultimately purchase the product; it requires only that OWE cloaked its dealer with the authority to act in its name—which the pleadings and declaration plausibly allege.

This is not to mention the fact that Our World's very affidavit through which it attempts to disprove agency expressly states that, "To the extent that Omni successfully generates a lead with a potential customer, OWE and the customer then enter into a separate agreement that defines and governs the relationship between OWE and the customer." (ECF No. 24-1 ¶ 6). By

Our World's own admission, therefore, the calls and in-person visits that Alpha conducted were done *to generate a relationship between "OWE and the customer,"* and not Alpha. Nothing in the calls or visit that resulted suggested that the caller lacked authority to act on Our World's behalf or that Alpha was a separate, unaffiliated entity. Therefore, no reasonable consumer would believe that he is being called by a purportedly "independent" company, particularly when Our World's trademark was used, and where pricing was provided that prominently featured Our World's branding. Indeed, Our World *required* Alpha to use only Our World-prepared marketing materials bearing Our World's marks, prohibited Alpha from modifying those materials, and controlled the content of any marketing bearing Our World's identity. (ECF No. 24-1, PageID 147). Our World thus affirmatively clothed Alpha with Our World's own brand identity in every consumer-facing interaction, including saying they are the "same company." And Our World granted Alpha access to Our World's proprietary pricing systems (the Adders Schedule and Fee Schedule) and required Alpha to present Our World's Customer Agreements to prospective customers without modification. (ECF No. 24-1, PageID 140, 142-43).

When, pursuant to Our World's contract, Alpha presents Our World-branded marketing materials, quotes Our World-approved pricing from Our World's own systems, and asks the consumer to sign Our World's own contract, all under Our World's name, a consumer's belief that Alpha represents Our World is both reasonable and directly traceable to Our World's own manifestations. These facts plausibly support the inference that Our World cloaked Alpha with apparent authority by permitting it to use Our World's name, trademarks, and marketing materials in consumer-facing telemarketing and resulting at-home visits. As a result, the Court should find Alpha acted with apparent authority.

3. *Mr. Moore has sufficiently pleaded Our World's ratification.*

- 13 -

Our World also ratified Alpha's acts. Ratification "occurs when the principal accepts the benefit of the agent's act either with [1] actual knowledge of the material facts or [2] with knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Williams*, 644 F. Supp. 3d at 855 (cleaned up). Ultimately, ratification is a fact-intensive inquiry. *See Charvat v. Valente*, No. 12 CV 5746, 2015 WL 3575636, at *3 (N.D. Ill. June 8, 2015). Here, Mr. Moore pleads facts sufficient to support an inference that Our World acted with actual knowledge of, or at minimum willful ignorance toward, Alpha's unlawful conduct. First, the calls were all made for the parties' mutual benefit: Our World stood to profit from the sale and installation of its solar products, and Alpha sought to receive a commission fee as a result of Our World's systems it sold for Our World, while Our World further stood to benefit from this outsourced sales conduct. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case). Second, Our World cannot deny it had "full knowledge of the facts and the choice to either accept or reject the benefit of the transaction," as Our World sent Mr. Moore a proposal prominently featuring its branding as a result of the illegal call and at-home visit. Our World had the ability to supervise and control Alpha's marketing practices and to terminate Alpha for noncompliance, but failed to do so. These allegations support the inference that Our World knowingly accepted the benefits of Alpha's telemarketing while declining to repudiate the unlawful conduct. At this stage, those allegations are sufficient to support a finding that Our World ratified Alpha's acts.

C.  Agency determinations require discovery and are best resolved at summary judgment or trial.

Courts are clear that "the precise details of the agency relationship need not be pleaded to survive a motion to dismiss" because "the information necessary to connect all the players is

likely in [the defendant's] sole possession." *Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG 2021 U.S. Dist. LEXIS 53561, at *7 (S.D. Cal. Mar. 22, 2021) The nature of the relationship between Our World and Alpha, particularly when viewed alongside the express terms of their Agreement, raises factual questions that cannot be resolved without discovery. Here, as in *Toney*, discovery is necessary to probe facts that are uniquely within Our World's control and directly relevant to agency. These include, among others: whether Our World knew or should have known that Alpha engaged in telemarketing, whether Our World received revenue from sales generated by Alpha's calls, the nature and scope of the advertising and marketing expenditures referenced in the Agreement, whether Our World's proprietary software systems were used in connection with the calling campaign at issue, whether Our World continued receiving revenue from Alpha-generated sales after this action was filed, the content of any communications between Our World and Alpha regarding calling activity, consumer outreach, and compliance, and whether Our World provided marketing guidance, materials, or training to Alpha. Each of these questions bears directly on actual authority, apparent authority, and ratification, and none can be resolved from the pleadings alone.

Our World's assertion that it "did not know" Alpha engaged in (illegal) telemarketing is a disputed factual claim at this stage. Whether Our World had actual or constructive knowledge of Alpha's calling practices is a question for discovery. Our World cannot simultaneously demand notice of every consumer complaint, accept every dollar of revenue Alpha generates, and then claim it was unaware of how that revenue was being produced.

## CONCLUSION

The Motion should be denied.

Dated: February 20, 2026

_Anthony I. Paronich_
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**