IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | | |
|---|---|---|
| **GEORGE MOORE, individually and on behalf of all others similarly situated,** | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 1:25-cv-13487 |
| | § | |
| **ALPHA ELECTRIC GROUP LLC D/B/A OMNI POWER AND OUR WORLD ENERGY, LLC,** | § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANT OUR WORLD ENERGY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Respectfully submitted,

*/s/ Caleb B. Bulls*
Caleb B. Bulls
caleb.bulls@kellyhart.com
Texas State Bar No. 24082749
**KELLY HART & HALLMAN LLP**
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Erik J. Ives (ARDC #6289811)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1202

***Attorneys for Defendant Our World Energy***

Defendant Our World Energy, LLC ("OWE") hereby files this Reply in Support of its Motion to Dismiss. In support, OWE shows the Court as follows:

## I.
## PRELIMINARY STATEMENT

1. Through his *Response in Opposition to Defendant Our World Energy LLC's Motion to Dismiss* (the "Response"), Plaintiff George Moore ("Plaintiff") contends that (i) the Court *can* exercise specific personal jurisdiction over OWE; and (ii) he *has* alleged facts sufficient to hold OWE vicariously liable under the Telephone Consumer Protection Act (the "TCPA"). Neither contention is correct.

2. To begin with, Plaintiff has failed to establish that the Court can exercise personal jurisdiction over OWE—a burden that Plaintiff bears. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). The touchstone question in any personal jurisdiction analysis is whether the nonresident defendant could have reasonably foreseen being haled into court in the forum state based upon its claims-relevant contacts with the State. In the TCPA context, whenever a plaintiff attempts to hold a non-calling defendant vicariously liable under agency theories (as is the case here), a plaintiff must show that the alleged principal controlled the "timing, content, and recipients" of the phone calls that were made into the forum state. *E.g., Warciak*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd* 949 F.3d 354 (7th Cir. 2020).

3. Through its Motion, OWE submitted detailed evidence which demonstrated that these hallmarks of TCPA agency were not present in this case, such that the Court cannot exercise personal jurisdiction over OWE. This evidence included the Sub Dealer Agreement (the

"Agreement"), which expressly prohibited Defendant Alpha Electric Group, LLC ("Alpha")[1] (OWE's alleged agent) from (i) referring to itself as OWE's agent, employee or affiliate; or (ii) calling individuals listed on the federal do-not-call registry. [Doc. 24-1, pp. 5-47 (Agreement), p. 6 (prohibiting Alpha from referring to itself as employee or agent), p. 38 (requiring compliance with do-not-call laws)]. The evidence attached to the Motion also included the Affidavit of Alicia O'Neill, which established that OWE did not retain control over the means, manners or methods by which Alpha generated sales leads and that OWE did not participate in the customer outreach process. [Doc. 24-1, p. 2, ¶ 5]. Plaintiff did not submit any evidence to rebut these points. Without any competing evidence on these points, Plaintiff has failed to satisfy his burden of showing that the Court can exercise personal jurisdiction over OWE. *See, e.g. Moore v. Charter Comm'ns, Inc.*, 523 F.Supp.3d 1046, 1051 (N.D. Ill. 2020).

4. *Charter*, a TCPA case that OWE cited in its Motion that involves this very same Plaintiff, is on all-fours and demonstrates precisely why the Court cannot exercise personal jurisdiction over OWE. *See id.* In that case, the Court analyzed an agreement between an alleged principal (Charter) and agent to determine if it could exercise personal jurisdiction over the nonresident defendant under agency theories of liability. *Id.* Relying on a provision that prohibited the alleged agent from making outbound telephone calls (among other things), the Court held that there was no principal-agent relationship and, as a result, that it could not exercise jurisdiction over Charter for alleged violations of the TCPA. *Id.*

5. Naturally, Plaintiff attempted to distinguish *Charter* in his Response. Plaintiff's attempt to do so falls flat. According to Plaintiff, *Charter* is "distinguishable" because, in that

---

[1] In OWE's Motion, OWE referred to Alpha as "Omni," its d/b/a. Plaintiff's Response used the term 'Alpha." "Alpha" and "Omni" are interchangeable. For ease of reference, OWE will use the term "Alpha" in this Reply.

**DEFENDANT OUR WORLD ENERGY'S REPLY IN SUPPORT OF MOTION TO DISMISS**      **PAGE | 2**

case, the operative agreement prohibited the alleged agent from making *any* outbound telephone calls—whereas, in this case, the Agreement "only" prohibits Alpha from making calls that violate the TCPA. [Doc. 27, p. 5]. This argument creates a distinction without a difference and should be rejected. In both cases, the respective agreements prohibited the alleged agent from making calls that violated the TCPA. Thus, in each case, neither nonresident defendant could have foreseen being haled into a foreign state's court for alleged violations of the TCPA. *See Charter*, 523 F.Supp.3d at 1052 (Plaintiff's argument in support of jurisdiction "did not plausibly explain why EXP [the alleged agent] would think that Charter consented to an act that violated the parties' marketing agreement."). Accordingly, just like the Court held that it could not exercise personal jurisdiction over Charter, the Court should find that it cannot exercise personal jurisdiction over OWE. *See id.*

6. The remainder of Plaintiff's Response tries to create an agency relationship by relying on irrelevant provisions in the Agreement and by arguing that the theories of apparent authority or ratification created an agency relationship. All of Plaintiff's arguments lack merit. At the end of the day, Alpha is not OWE's agent, and the Court cannot exercise personal jurisdiction over OWE. In addition, without an agency relationship, Plaintiff has also failed to state a claim for vicarious liability under the TCPA against OWE.

7. For these reasons, those previously set forth in the Motion, and those further set forth herein, OWE respectfully requests that the Court grant the Motion and dismiss Plaintiff's Complaint for (i) lack of personal jurisdiction; and/or (ii) failure to state a claim under the TCPA.

## II.
## ARGUMENT

***A.    Plaintiff Failed to Satisfy His Burden of Establishing Personal Jurisdiction.***

8.     Plaintiff's Response initially advances a series of jurisdictional arguments that have absolutely no merit. For example, Plaintiff's Response cites to two cases (*Lowe* and *Payton*) as a basis for the Court to exercise jurisdiction over OWE. But *Lowe* and *Payton* have no application to the facts at hand. Both cases simply stand for the unremarkable proposition of law that a court can exercise personal jurisdiction regarding TCPA claims when the defendant seeking to avoid jurisdiction actually initiated the complained-of phone calls. That is not the case here. OWE did not place the complained-of phone calls, and Plaintiff has not alleged that it did. [Doc. 1, ¶¶ 22-30]. *Lowe* and *Payton*, thus, provide no basis for the Court to exercise personal jurisdiction over OWE.

9.     Plaintiff's Response also contends that the Court can exercise jurisdiction over OWE because it has a satellite office in Illinois. [Doc. 27, pp. 1, 5]. OWE's satellite office in Illinois has zero connection to Plaintiff's claims and cannot serve as a "contact" with the State of Illinois in the Court's specific personal jurisdiction analysis.[2] *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco, Cnty.*, 582 U.S. 255, 264 (2017); *Charter*, 523 F.Supp.3d at 1051 ("[A]ny specific jurisdiction must arise from the relevant phone calls."); *Hanchett Paper Co. v. Office Depot, LLC*, 2023 WL 5390229, at *4 (N.D. Ill. 2023) ("Office Depot's general operations in Illinois do not apply to the specific personal jurisdiction analysis; only its suit-related contacts matter."). Tellingly, Plaintiff has not advanced a single allegation that ties OWE's

---

[2] Plaintiff has only alleged that the Court can exercise specific personal jurisdiction over OWE; he has not alleged that the Court can exercise general personal jurisdiction over OWE. [Doc. 1, ¶ 10].

**DEFENDANT OUR WORLD ENERGY'S REPLY IN SUPPORT OF MOTION TO DISMISS       PAGE | 4**

satellite office to the claims asserted in this lawsuit. [*See generally id.* (no allegations regarding satellite office or telemarking efforts performed in satellite office)].

10. Lastly, Plaintiff's Response tries to distance this case from *Moore v. Charter Comm's*, a TCPA case involving this very same plaintiff where the Court dismissed Plaintiff's claims for lack of personal jurisdiction. 523 F.Supp.3d at 1052-54. According to Plaintiff, *Charter* is distinguishable because the contract between the non-resident defendant (Charter) and the defendant that actually placed the calls in that case included a provision that prohibited *all* outbound telephone calls. [Doc. 27, p. 5]. Thus, because the Agreement here *only* prohibited Alpha from making calls to individuals on the federal do-not-call registry (as opposed to making any calls whatsoever), Plaintiff contends that *Charter* is not applicable. [*Id.*].

11. Plaintiff's argument misses the mark and creates a distinction without a difference. The rationale for dismissing Plaintiff's claim in *Charter* was that the non-resident defendant could not reasonably foresee being haled into an Illinois court for alleged violations of the TCPA when its agreement prohibited the contractor from making outgoing phone calls. *See id.* The same rationale applies here. In this case, the Agreement prohibited Alpha from making calls that violated the TCPA, which necessarily included calls made into the State of Illinois. [Doc. 24-1, p. 38]. As a result, just like Charter, OWE could not reasonably foresee that it could be haled into an Illinois court for Alpha's alleged violations of the TCPA. *See id.* Plaintiff's attempt to distinguish *Charter* fails for that reason.

12. Without a doubt, Plaintiff's jurisdictional "arguments" have no merit. OWE's contacts with the State of Illinois have nothing to do with the claims that Plaintiff has advanced under the TCPA in this lawsuit. As a result, the Court cannot exercise specific personal jurisdiction

over OWE, and Plaintiff's Complaint should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(2).

### B. Plaintiff Has Failed to Establish an Agency Relationship.[3]

13. Plaintiff's Response next claims that his Complaint should not be dismissed because he has adequately pled that (i) Alpha is OWE's agent; and as a result (ii) OWE can be vicariously liable for Alpha's actions. In support of his argument, Plaintiff claims that: (i) Alpha had actual authority; (ii) Alpha had apparent authority; or (iii) OWE ratified Alpha's actions. None of Plaintiff's arguments withstand scrutiny.

### i. There is No Actual Authority.

14. Plaintiff's Response first claims that Alpha purportedly had actual authority to act on OWE's behalf. In support of his contention, Plaintiff solely relies on the terms and provisions set forth in the Agreement, claiming that the Agreement "contains remarkable indicia of" actual authority. [Doc. 1, pp. 8]. Plaintiff's claim lacks merit. To be clear, while the Agreement contains some threshold operational requirements, it is axiomatic that "[r]equiring an independent contractor to follow certain policies and procedures does not by itself constitute sufficient control to create an agency relationship." *Jackson v. Callahan Publ'g, Inc.*, 191 N.E.3d 1099, 1143 (Ill. App. Ct. 2021).

15. In support of his argument, Plaintiff claims that, under the Agreement, OWE "retained the unilateral right to modify every operative rule governing Alpha's customer-facing conduct at any time, with only seven days' notice" and that "[t]he Agreement grants Our World the power to unilaterally revise the Code of Conduct, the Marketing Requirements, and the Vendor

---

[3] The existence of an agency relationship is relevant for both Rule 12(b)(2) and 12(b)(6) purposes. Thus, this argument is relevant to both grounds for dismissal.

Obligations" without Alpha's consent. [Doc. 1, p. 8]. Plaintiff's argument is hyperbole and tries to make the Code of Conduct, the Marketing Requirements and the Vendor Obligations into something they are not. None of these documents (which are exhibits to the Agreement) grant OWE the right to control Alpha's operations, the manner in which it conducts business, or the ways in which Alpha generates sales leads or contacts potential customers.

16. For example, the Code of Conduct sets forth basic provisions, such as a records retention provision, marketing guidelines, a compliance with telemarketing laws provision, and bare-bones ethical standards. [Doc. 24-1, pp. 38-40]. The Marketing Requirements are similar in that they required Alpha to disclose the nature of its relationship with OWE to all potential customers, prohibited Alpha from using materials that referenced OWE without OWE's prior written consent, and confirmed that Alpha did not have any rights to OWE's trademarks. [*Id.*, pp. 41-42]. The Vendor Obligations simply provided that Alpha was responsible for performing lead generation and sales services. [*Id.*, pp. 36-37]. Nothing more.

17. To claim that these stereotypical types of commercial provisions somehow created a principal-agent relationship strains credulity. Critically, none of these exhibits dictated the methods, means or manners by which Alpha could generate sales leads or use telemarketing efforts (other than requiring Alpha to comply with applicable laws, including by prohibiting it from calling individuals on the do-not-call registry). [*Id.*, pp. 36-42]. Stated differently, the Agreement does not require Alpha to conduct telemarketing efforts and it does not dictate the "timing, content, and recipients" of any telemarketing campaign, as is required to establish an agency relationship for TCPA purposes. [*See generally* Doc. 24-1, pp. 5-47 (no provisions in the Agreement setting forth requirements of any telemarketing campaign)]. The Affidavit of Alicia O'Neill reinforced

these points and confirmed that OWE did not participate in the process of determining which potential customers to contact or what to say to them. [Doc. 24-1, ¶ 5].

18. While Alpha could certainly market by telephone if it chose to, the only requirement imposed on Alpha was not to call individuals on the federal do-not-call registry. [Doc. 24-1, p. 38]. There were no minimum volume calling requirements, no scripts to use, and there were no requirements on which types of individuals to call or contact. [Doc. 24-1, pp. 5-47; *see* Doc. 24-1, p. 2, ¶ 5]. Plaintiff's reliance on the Code of Conduct, the Marketing Requirements and the Vendor Obligations is misplaced for those reasons.[4]

19. The Response also claims that OWE provided Alpha "a detailed script outline governing what Alpha's representatives could say to customers, in what languages, on which topics, and with what representations." [*Id.*, p. 9]. According to Plaintiff, this is further evidence that Alpha was OWE's agent. The only evidence that Plaintiff relies upon for this averment is the Code of Conduct. [Doc. 27, p. 9 (describing the Code of Conduct as a "detailed script outline")].

20. An actual review of the Code of Conduct, however, shows that it is not a "detailed script outline." [Doc. 24-1, pp. 38-40]. Indeed, the only requirements imposed by the Code of Conduct were for communications to (i) be made in English or Spanish [Doc. 24-1, p. 40 (Section 8.11)], and (ii) include information regarding a customer's right to cancel purchases. [*Id.*, p. 39 (Section 8.2)]. The remainder of the "requirements" imposed by the Code of Conduct were standard commercial requirements (e.g. records retention) or focused on the need for Alpha to

---

[4] Plaintiff also claims that actual authority exists because OWE has the right to observe or review the conduct of Omni and that Omni was required to comply with instructions regarding services. [Doc. ##, p. 9]. Plaintiff made the same allegation in *Charter*, and the Court rejected it as a basis for establishing agency liability. *Charter*, 523 F.Supp.3d at 1049. The Court should reach an identical result here.

comply with applicable consumer laws and regulations (e.g., by not providing false information or promises and/or making misrepresentations to the customers).[5] [*Id.*, pp. 38-40].

21. The Code of Conduct is not a "script," and it certainly does not provide OWE the degree of control that courts have held sufficient to hold a non-calling defendant vicariously liable under the TCPA. The case that Plaintiff relies upon in support of its position, *Toney v. Quality Res., Inc.*, underscores this point. In that case, the non-calling defendant did provide the calling-

---

[5] For example, the Code of Conduct included the following provisions:

> **1. Records Retention.** Vendor must maintain copies of all pertinent information relating to the Services, including any record of a Customer, and provide said copies/information promptly to OWE to hold for a period of not less than three (3) years. Vendor must comply with all applicable laws concerning records and document retention.
> \*\*\*
> **4. Anticorruption.** Vendor must comply with all applicable anticorruption and antibribery laws such as the United States Corrupt Practices Act. Vendor must never pay or receive a bribe or receive or provide anything of value to any person (including government officials) in order to improperly influence such person.
> \*\*\*
> **6. Telemarketing Guidelines.** Vendor must comply with all laws and registration requirements relating to telemarketing, including do-not-call requirements. Vendor is not permitted to (a) make any unsolicited call or send text messages to a cell phone number; or (b) make any call through an automated dialer (including any telephon[e] technology that is capable of autodialing).
> \*\*\*
> 8.2 <u>Notice of Cancellation.</u> You must orally notify customers that they have the right to cancel the contact as required by state and federal law. In doing so, you may not state that the contract is "not binding" or anything to that effect; the contract is binding unless the customer exercises his or her right to cancel.
>
> 8.3 <u>Misrepresentations Regarding Relationships with Utilities.</u> You may not say or do anything that may reasonably cause a customer to believe you or OWE is affiliated with a utility company. You do not work for or in partnership with any utility. Other than net metering and interconnection, there is no relationship between OWE and a utility company.
> \*\*\*
> 8.12 <u>Savings.</u> You may not promise any customers that they will save money through any of the products OWE offers. As a result, we must be extremely careful when discussing potential savings with consumers. You may not say or do anything to make a consumer believe they are guaranteed to save money. OWE does not promise the availability of or eligibility for any local, state, or federal incentives or tax credits.

[Doc. 24-1, pp. 38-40].

defendant a detailed script[6] that the calling-defendant was required to follow "verbatim." *Toney*, 75 F.Supp.3d at 743. Moreover, the non-calling defendant/principal would ultimately participate in the phone call once a recipient agreed to purchase the offered goods for "verification" purposes. *Id.* The allegations and evidence that Plaintiff has submitted in this case fall woefully short of those present in *Toney*. At bottom, there is nothing in the Agreement that requires Alpha to conduct a telemarketing campaign on OWE's behalf or that gives OWE the right to control the "timing, content, and recipients" of any telemarketing calls. Without such, OWE cannot be held vicariously liable under the TCPA.

22. Plaintiff lastly contends that actual authority was created because "the calls were made from agents who claimed to be calling from Our World, invoked the Our World name, and marketed Our World's branded goods and services, including via an [alleged] email from Our World and a manifestation that 'Omni Power and Our World Energy are the same company.'" [Doc. 1, p. 10]. Plaintiff's attempt to create actual authority through these allegations fails for several reasons. First, the Agreement explicitly prohibited Alpha from referring to itself as OWE's agent, employee, affiliate or franchisee. [Doc. 24-1, p. 6 (Section 2(c)), *see* p. 41 (Sectoin 1 requiring Alpha to disclose nature of relationship with OWE)]. OWE, thus, did not actually authorize these alleged actions. Second, these types of allegations simply do not matter for purposes of determining actual authority.[7] All that matters is whether the principal controlled or had the right to control the alleged agent's conduct and whether the alleged conduct fell within the scope of the agency relationship. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731-32

---

[6] The plaintiff attached a copy of the script as an exhibit to her Third Amended Complaint. No such script exists in this case.

[7] Conceivably, those facts could be relevant for purposes for an apparent authority argument *if* OWE had manifested Alpha with the authority to act (which it did not).

(7th Cir. 2014) (establishing elements for actual authority). Thus, Plaintiff's allegations concerning what Alpha said or what Alpha did are irrelevant for purposes of analyzing actual authority. *See id.* OWE respectfully requests that the Court grant the Motion for those reasons.

ii. There is No Apparent Authority.

23. Plaintiff's attempt to create an agency relationship through apparent authority is similarly wanting. [Doc. 27, pp. 11-13]. As OWE explained in the Motion, apparent authority "exists when a third-party reasonably relies on the principal's manifestation of authority to an agent." *Charter*, 523 F.Supp.3d at 1053. Thus, "[s]tatements by an agent are insufficient to create apparent authority." *Id.* (citing *Warniak*, 949 F.3d at 357).

24. Plaintiff's Response did little to address these points. [*See id.*]. Indeed, Plaintiff does not identify a single act that OWE committed that authorized Alpha to claim that it was OWE's agent or representative. [*Id.*]. Nor does Plaintiff allege how he relied on any manifestation of such authority to Alpha. Instead, Plaintiff repeats actions that *Alpha* allegedly took (in violation of the express terms of the Agreement) to incorrectly claim apparent authority exists. [*Id.*, p. 11 ("From Mr. Moore's perspective, nothing suggested that Our World and Alpha/Omni were anything but the same company, . . .")].

25. But that does not create apparent authority. *See, e.g., id.* (declining to find apparent authority without allegations of reasonable reliance on alleged principal's representations); *Toney*, 75 F.Supp.3d 727, 744 (N.D. Ill. 2014) (declining to find apparent authority when the plaintiff "fail[ed] to trace any belief she may have had about the relationship between Quality and Sempris to a manifestation of Sempris (the alleged principal) rather than a representation made by Quality (the alleged agent)."). Without a manifestation from OWE to Alpha, or reasonable reliance by

Plaintiff on an alleged manifestation of authority, Plaintiff's attempt to create apparent authority fails as a matter of law. *Id.*

26. Plaintiff's attempt to create apparent authority by claiming that OWE and Alpha's relationship was "exclusive" also lacks merit. [Doc. 27, p. 9]. The plain language of the Agreement states that OWE "shall be the installer (<u>*non-exclusive*</u>) for Vender [sic] for any residential sales" made "in the state of Arizona." [Doc. 24-1, p. 5 (Section 2(b) (emphasis added)]. There is nothing in the Agreement that established any type of exclusive relationship between the parties that would make Alpha a captive vendor.

27. Applying the foregoing law, there is no basis for the Court to determinate that apparent authority exists. There has been no manifestation of authority by OWE that authorized Alpha to claim that it was OWE's agent, and Plaintiff has not submitted any allegation or evidence that demonstrates that he relied on any representation that OWE made. *See id.* OWE respectfully requests that the Court grant the Motion for that reason too.

### iii. Plaintiff Has Not Pled Ratification. Regardless, Ratification Does Not Apply.

28. Plaintiff's Response next contends that an agency relationship was created through ratification. This contention fails for several reasons.

29. To start with, Plaintiff has not pled that OWE can be vicariously liable because it ratified Alpha's actions. [*See generally* Doc. 1 (no allegations of ratification)]. It is black-letter law that a plaintiff cannot amend its complaint through a brief in opposition to a motion to dismiss.[8] The Court does not need to consider Plaintiff's ratification theory of agency for that reason alone.

30. Regardless, ratification does not apply here. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual

---

[8] *Velez v. RM Acquisition, LLC*, 670 F.Supp.3d 629, 640 (N.D. Ill. 2023) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

**DEFENDANT OUR WORLD ENERGY'S REPLY IN SUPPORT OF MOTION TO DISMISS**     **PAGE | 12**

authority." *Charter*, 523 F.Supp.3d at 1054. Here, Plaintiff claims that ratification applies because OWE "stood to benefit" from Alpha's telemarketing efforts and because a proposal was sent bearing OWE's marketing materials after the in-person meeting between Plaintiff and Alpha occurred. [Doc. 27, p. 14]. Nearly identical allegations were rejected in *Charter*:

> Moore contends that Charter ratified EXP's conduct by emailing him after EXP called him. Moore further contends that Charter knowingly accepted new customer contracts based on phone calls placed by EXP. But Moore does not allege that Charter knowingly accepted any benefit based on the calls EXP made to him. Nor has Moore put forth any allegations challenging Charter's declaration that the order initially placed over the phone was never completed. Plaintiff's ratification argument therefore fails as well.

*Id.*

31. Thus, for the same reasons set forth in *Charter*, Plaintiff has failed to allege or demonstrate that ratification applies. OWE respectfully requests that the Court grant the Motion for that reason too.

C. **Dismissal is Warranted at the Pleading Stage Without Further Proceedings.**

32. Plaintiff's Response repeatedly claims that the Motion should be denied because Plaintiff has purportedly made plausible allegations concerning the existence of an agency relationship. [Doc. 27, pp. 14-15]. Thus, Plaintiff claims that he should be entitled to discovery and have the determination of whether Alpha is OWE's agent be rendered on summary judgment or at trial. [Doc. 27, pp. 14-15]. But that is not the standard to survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, which is the ground that OWE principally moved on as related to the agency arguments.[9]

---

[9] To the extent relevant to OWE's alternative argument for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, it should further be noted that Plaintiff has <u>not</u> satisfied his burden to plausibly allege the existence of an agency relationship. The terms of the Agreement negate such a relationship. [Doc. 24, ¶¶ 23-36; Doc. 24-1, pp. 5-47 (Agreement)].

33. It is axiomatic that "[t]he plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). And when a court decides a Rule 12(b)(2) motion without a hearing, the plaintiff is required to make a *prima facie* case of personal jurisdiction in order to survive the motion to dismiss. *Id.* While courts liberally construe the complaint in plaintiff's favor in this context, courts must "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GGIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

34. Here, OWE submitted the Agreement and the Affidavit of Alicia O'Neill in support of its request for dismissal under Rule 12(b)(2). The Agreement shows, among other things, that (i) OWE did not retain control over any type of telemarketing campaign; (ii) OWE prohibited Alpha from referring to itself as OWE's agent, employee or affiliate; and (iii) OWE required Alpha to comply with all laws, including do-not-call laws. [Doc. 24-1, pp. 5-47]. Ms. O'Neill's affidavit further established that OWE "does not control the means, methods or manners in which Omni [Alpha] performs lead generation or sales development services", and confirmed that "[i]t is Omni's [Alpha's] decision who to contact, how to contact them, and how best to pursue any given lead," among other key determinations that are left solely in Alpha's discretion under the terms of the Agreement (without any input or direction or OWE). [Doc. 24-1, p. 2, ¶ 5].

35. Plaintiff's Response did not submit any evidence to rebut these key evidentiary points. Taking this unrefuted evidence as true (as the Court must), Plaintiff has failed to satisfy his burden of making a *prima facie* showing of personal jurisdiction. *See id.* The record before the Court does not establish that OWE maintained the requisite degree of control over Alpha or any telemarketing campaign that could justify the exercise of personal jurisdiction over OWE

through agency principles of law. Instead, the unrebutted evidence shows that Alpha chose which potential customers to contact, when to contact them, and how to contact them. [Doc. 24-1, p. 2, ¶ 5]. As explained by Ms. O'Neill, "OWE d[id] not participate in that process." [*Id.*]. Because there is no evidence that rebuts these points, the Court cannot exercise personal jurisdiction over OWE, and the Motion should be granted.

### III.
### CONCLUSION

For the above-stated reasons, and those previously set forth in the Motion, OWE respectfully requests that the Court grant the Motion and dismiss Plaintiff's claims.

Respectfully submitted,

*/s/ Caleb B. Bulls*
Caleb B. Bulls
caleb.bulls@kellyhart.com
State Bar No. 24082749
**KELLY HART & HALLMAN LLP**
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
*Admitted Pro Hac Vice*

Erik J. Ives (ARDC #6289811)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1202
eives@foxswibel.com

***Attorneys for Defendant Our World Energy***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record via the Court's ECF filing system and/or electronic mail on March 6, 2026:

Anthony Paronich
anthony@paronichlaw.com
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043

Justin Penn
Natalie Burris
**HINSHAW & CULBERTSON, LLP**
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606

                                          */s/ Caleb B. Bulls*
                                          Caleb B. Bulls